# State of Connecticut v. Michael L. Murray
## (14645)

Peters, C. J., Borden, Norcott, Santaniello and F.X. Hennessy, Js.[1]

Argued January 12—decision released April 13, 1993

[1] The panel in the case was originally composed of Peters, C. J., Borden, Berdon, Norcott and Santaniello, Js. After oral argument, Justice Berdon recused himself from this appeal. Judge Hennessy was then added to the panel, and he participated in the decision after reviewing the briefs and listening to the tape recording of the oral argument.

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *Domenick J. Galluzzo,* deputy chief state's attorney, and *George Ferko,* deputy assistant state's attorney, for the appellant (state).

*Michael L. Murray,* pro se, the appellee (defendant).

BORDEN, J. The issue in this appeal is whether Practice Book § 986 (4)[2] is a valid exercise of the judicial rule-making authority, or whether, as the trial court held, § 986 (4) is unconstitutional because it violates the separation of powers between the legislative and judicial branches.[3] The state filed a substitute information pursuant to Practice Book § 991,[4] charging the defendant, Michael L. Murray, with four counts of criminal contempt in violation of Practice Book §§ 985 and 986 (4). On the motion of the defendant, the trial court rendered a judgment dismissing the information

[2] Practice Book § 986 provides: "[CRIMINAL CONTEMPT]——WHO MAY BE PUNISHED

"The judicial authority may punish by fine or imprisonment or both:

"(1) Any person who in the court's presence behaves in a contemptuous or disorderly manner;

"(2) Any person who violates the dignity and authority of any court, or any judicial authority, in its presence or so near thereto as to obstruct the administration of justice;

"(3) Any officer of the court who misbehaves in the conduct of his official duties; or

"(4) *Any person disobeying in the course of a civil or criminal proceeding any order of a judicial authority.*" (Emphasis added.)

[3] Article second of the constitution of Connecticut provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

[4] Practice Book § 991 provides: "[NONSUMMARY CRIMINAL CONTEMPT] —— ——NATURE OF PROCEEDINGS

"A criminal contempt not adjudicated under Sec. 987 shall be prosecuted by means of an information. The judicial authority may, either upon his own order or upon the request of the prosecuting authority, issue an arrest warrant for the accused. The case shall proceed as any other criminal prosecution under these rules and the General Statutes."

because, in its view, the legislature has abrogated the judiciary's inherent power to adjudicate a charge of contempt of court for conduct occurring outside the presence of the court. The state has appealed.[5] We reverse the judgment of the trial court.

[5] The state appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The state appealed pursuant to General Statutes § 54-96, which provides: "Appeals from the rulings and decisions of the superior court, upon all questions arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

This case involves a proceeding in the trial court in which the state seeks, pursuant to Practice Book §§ 985 and 986 (4), a nonsummary adjudication of criminal contempt of court for conduct outside the presence of the court. Although such a proceeding requires most of the usual procedural protections inherent in a prosecution for a crime; see *Young* v. *United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798–800, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987); our precedents make clear that "a proceeding for [criminal] contempt, while it is of a criminal nature, is not a criminal prosecution." *State* v. *Howell*, 80 Conn. 668, 671, 69 A. 1057 (1908); see also *Wilson* v. *Cohen*, 222 Conn. 591, 599, 610 A.2d 1177 (1992) (summary criminal contempt not a "criminal action" within meaning of General Statutes § 54-82b, governing right to jury trial in a "criminal action"); *State* v. *Jackson*, 147 Conn. 167, 158 A.2d 166 (1960) (summary criminal contempt not a criminal "offense" within meaning of General Statutes [1958 Rev.] § 54-12, governing appeals from city court to Court of Common Pleas). On the other hand, Practice Book § 991, governing nonsummary criminal contempt proceedings; see footnote 4; provides in relevant part: "The case shall proceed as any other criminal prosecution under these rules and the General Statutes."

We need not decide in this case whether § 54-96 requires the permission of the trial court for the state to appeal from a judgment of dismissal of an information filed under § 991; or whether, to the contrary, the state has an unlimited right to appeal, equivalent to the right to appeal of an individual who has been nonsummarily adjudicated in contempt for out-of-court conduct. See *McClain* v. *Robinson*, 189 Conn. 663, 667, 457 A.2d 1072 (1983). Such an unlimited right of appeal by the state could be supported on the ground that the purpose of an action pursuant to § 991 is not to vindicate the aims of the criminal law but "to vindicate the authority of the court." Practice Book § 985. This determination is unnecessary in this case, however, because if § 54-96 applies, such permission was granted; and if it does not apply, such permission was unnecessary. Compare *McClain* v. *Robinson*, supra, 669 (sole method of review for summary adjudication of contempt is by writ of error).

In March, 1990, William B. Lewis, a judge of the Superior Court, issued a temporary restraining order against the defendant, ordering him not to disclose to any person information relating to personnel matters at the Boulder, Colorado facility of International Business Machines Corporation (IBM) that the defendant had obtained while serving as IBM's area counsel in Boulder. In June, 1990, Judge Lewis issued a temporary injunction against the defendant enjoining him from disclosing certain other material, referred to as "the DeRoma and Akers material."

Subsequently, the state brought this four count information. The state accused the defendant of "criminal contempt" in each count, and alleged in the first two counts that on March 19, 1990, and April 23, 1990, respectively, the defendant "did engage in conduct directed against the dignity and authority of the court when, in the course of a civil proceeding, he wilfully disobeyed a valid order of a judicial authority," namely, the March, 1990 temporary restraining order issued by Judge Lewis. In the third and fourth counts, the state alleged that on January 4, 1991, the defendant "did engage in conduct directed against the dignity and authority of the court when, in the course of a civil proceeding, he wilfully disobeyed a valid order of a judicial authority," namely, the June, 1990 temporary injunction issued by Judge Lewis. In all four counts, the state alleged that the defendant's "criminal contempt [was] in violation of Connecticut common law as defined in Sections 985 and 986 (4) of the Practice Book."

The defendant moved to dismiss the information pursuant to Practice Book § 815 (8).[6] He asserted that:

---

[6] Practice Book § 815 provides in relevant part: "[MOTION TO DISMISS] ——MATTERS TO BE RAISED

"The following defenses or objections, if capable of determination with-

(1) since the enactment in 1971 of General Statutes § 51-33a, all criminal contempts of court—whether in or outside the presence of the court—are regulated by statute; (2) because this prosecution was not authorized by statute, it violates the separation of powers required by article second of the Connecticut constitution; and (3) insofar as Practice Book §§ 985 and 986 (4) authorize punishment for activity not in or critically near a court, such provisions are invalid because they go beyond the court's inherent power and beyond statutory authority, thereby violating the separation of powers.

The trial court granted the motion to dismiss. The court reasoned that, under the doctrine of separation of powers, the classification of crimes is a legislative function, and that the legislature had performed that function with regard to criminal contempt of court by enacting General Statutes §§ 51-33[7] and 51-33a.[8] The court also reasoned that neither statute classifies as criminal the conduct proscribed by Practice Book § 986 (4), namely, "disobeying in the course of a civil

out a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the indictment or information . . .

"(8) Claim that the law defining the offense charged is unconstitutional or otherwise invalid . . . ."

[7] General Statutes § 51-33 provides: "PUNISHMENT FOR CONTEMPT OF COURT. Any court, including a family support magistrate, may punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner; but no court or family support magistrate may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both."

[8] General Statutes § 51-33a provides: "CRIMINAL CONTEMPT. (a) Any person who violates the dignity and authority of any court, in its presence or so near thereto as to obstruct the administration of justice, or any officer of any court who misbehaves in the conduct of his official duties shall be guilty of contempt and shall be fined not more than five hundred dollars or imprisoned not more than six months or both.

"(b) No person charged with violating this section may be tried for the violation before the same judge against whom the alleged contempt was perpetrated."

or criminal proceeding any order of a judicial authority." The trial court concluded, therefore, that § 986 (4) was unconstitutional as violative of the separation of powers, and the information had to be dismissed pursuant to Practice Book § 815 (8). This appeal followed.

The state claims that the trial court improperly concluded that (1) the legislature has abrogated the court's inherent power to punish, as criminal contempt of court, conduct occurring outside the court's presence that violates a judicial order, and (2) Practice Book § 986 (4) violates the separation of powers. We agree.

We begin by noting what this appeal does not involve. Contrary to the assertion of the defendant, it does not involve the question of whether the court orders that the defendant allegedly violated applied outside Connecticut. Nor does it involve the question of whether the trial court could have imposed civil rather than criminal sanctions for contempt of court. The defendant specifically "does not dispute a court's authority to impose civil sanctions to obtain [compliance with] its lawful orders." Furthermore, we do not consider, and express no opinion regarding, certain claims that the defendant purports to raise as alternate grounds to sustain the trial court's judgment.[9]

---

[9] These claims are that: (1) the information was subject to dismissal because the Superior Court had, in a previous civil contempt proceeding, ruled for the defendant on the same allegations made herein; (2) the information does not adequately inform him of the nature and cause of the accusations; (3) the prosecution is barred by an applicable statute of limitations; (4) the judicial order that forms the basis of the first two counts of the information was based upon a statute that was later declared unconstitutional; (5) that judicial order had been obtained by fraud; (6) the prosecution is barred by double jeopardy and collateral estoppel; (7) the temporary orders upon which the prosecution is based are vague and uncertain; (8) the prosecution violates the defendant's rights to equal protection of the laws, due process of law, free speech, and to be tried in the jurisdiction in which the offenses allegedly occurred; and (9) the prosecution was undertaken with prosecutorial misconduct. Also, we decline the defendant's request that we reconsider our earlier ruling denying the defendant's motion to dismiss this appeal.

Practice Book §§ 985 through 994 govern criminal contempt of court. Sections 985 and 986 govern the nature of the conduct involved, the purpose of the sanctions, and the persons who may be punished. Section 985 defines a criminal contempt of court as "conduct that is directed against the dignity and authority of the court," and provides that the sanction for such conduct "is punitive in order to vindicate the authority of the court." Section 986 governs who may be punished, "by fine or imprisonment or both," for criminal contempt: under subsections (1) through (3), in general terms, persons whose conduct occurs either in the presence of the court or so near thereto as to obstruct justice, and officers of the court who misbehave in the performance of their official court duties; and under subsection (4), "[a]ny person disobeying in the course of a civil or criminal proceeding any order of a judicial authority." In contrast to subsections (1) and (2), therefore, subsection (4) governs conduct occurring outside the presence of the court.[10]

Practice Book §§ 991 through 994 govern nonsummary criminal contempt.[11] In general terms, these sections determine how such a proceeding may be prosecuted; Practice Book § 991; see footnote 4;[12] who

[10] We have further classified contempts of court, whether civil or criminal, as "direct" or "indirect." A direct contempt, exemplified by Practice Book § 986 (1) and (2), involves conduct occurring in or near the presence of the court. An indirect contempt, exemplified by § 986 (4), involves conduct occurring outside the court's presence, such as a refusal to comply with an injunctive decree. See *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 150, 496 A.2d 476 (1985).

[11] Practice Book §§ 987 and 988 govern summary criminal contempt. Those provisions are not involved in this case.

[12] Practice Book § 991 requires that a nonsummary criminal contempt "be prosecuted by means of an information." Thus, such a proceeding must be brought by the state, because Practice Book § 617 requires that an information "be signed by the prosecuting authority." Prior to the adoption of our rules of criminal procedure in 1976, such a proceeding could be prosecuted by a private party; see, e.g., *McTigue* v. *New London Educa-*

may hear such a proceeding; Practice Book § 992;[13] the right to a jury trial in such a proceeding; Practice Book § 993;[14] and the limits of the sanctions that may be imposed. Practice Book § 994.[15]

At issue in this case is the power of the trial court to act under § 986 (4) in a nonsummary fashion by punishing, as criminal contempt of court, conduct occurring outside of the court's presence, by a "person disobeying in the course of a civil or criminal proceeding any order of a judicial authority." We conclude that the court has such inherent power, and that the legislature has not abrogated it by any legislative enactment.

The inherent power of a Connecticut trial court nonsummarily to punish, as criminal contempt of court, conduct occurring outside the court's presence, such as disobedience to a judicial order, has been recognized in an unbroken line of authority from the earliest days of our judiciary to the present. These authorities have

*tion Assn.*, 164 Conn. 348, 321 A.2d 462 (1973); as well as by the state. See, e.g., *State* v. *Howell*, 80 Conn. 668, 69 A. 1057 (1908).

[13] Practice Book § 992 provides: "[NONSUMMARY CRIMINAL CONTEMPT]——DISQUALIFICATION OF JUDICIAL AUTHORITY

"The trial and all related proceedings on which the contempt charges are based shall be heard by a judicial authority other than the trial judge or the judicial authority who had issued the order which was later disobeyed."

[14] Practice Book § 993 provides: "[NONSUMMARY CRIMINAL CONTEMPT]——RIGHT TO JURY TRIAL

"No person shall receive a total effective sentence of more than thirty days imprisonment or a fine in excess of ninety-nine dollars unless he has been afforded the right to a jury trial."

[15] Practice Book § 994 provides: "[CRIMINAL CONTEMPT]—JUDGMENT AND PUNISHMENT

"The judgment of contempt shall be prepared within a reasonable time by the clerk and shall be signed by the judicial authority and entered on the record. The sentence shall be pronounced in open court and shall not exceed six months imprisonment or a fine of five hundred dollars or both, for each contemptuous act."

also consistently recognized that this inherent power is separate and distinct from the statutes regulating the exercise of the contempt power for conduct occurring in the court's presence. See 2 Z. Swift, A Digest of the Laws of the State of Connecticut (1823) pp. 358–59 ("Though the statute only contemplates contempts in presence of the court, yet at common law contempts not in the presence of the court may be· punished in a summary manner . . . . When courts punish for contempts, committed in their presence, they must inflict a definite fine, or imprison for a certain time in the manner prescribed by the statute: but where they punish for contempts at common law, or not committed in their presence they may imprison till further order of the court . . . ."); *Rogers Mfg. Co.* v. *Rogers,* 38 Conn. 121, 123 (1871) (criminal contempt for violation of injunction) ("The limitation provided for punishment of contempts in the presence of courts . . . has no application to contempts by disobedience to the orders and decrees of courts of chancery."); *Tyler* v. *Hamersley,* 44 Conn. 393, 412 (1877) (criminal contempt for disobedience to writ of mandamus) ("Contempts are offences at common law against the court as an organ of public justice. The right of punishment is inherent in all courts and is essential for their protection and existence."); *Huntington* v. *McMahon,* 48 Conn. 174, 196 (1880) (criminal contempt for taking property by force from judicial officer who held it for condemnation) ("[T]he statute deals only with acts of contempt committed in the presence of the court, and where no process is required to bring the offender into court. It leaves all other cases of contempt to be ascertained and punished according to the course of the common law."); *Welch* v. *Barber,* 52 Conn. 147, 156 (1884) (criminal contempt for falsely causing attorney to secure continuance) ("There are . . . acts which are in defiance of the power and dignity of the court, but which are not

actually nor constructively in its presence. . . . These . . . are not within the statute, but are defined and punished by the common law."); *State* v. *Howell,* 80 Conn. 668, 671, 69 A. 1057 (1908) (criminal contempt for publishing newspaper articles about trial) ("The proceeding in contempt is for an offense against the court as an organ of public justice and not for a violation of the criminal law. The power to punish such offenses is inherent in courts of record, to enable them to preserve their own dignity and to duly administer justice in the causes pending before them."); *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 353, 321 A.2d 462 (1973) (criminal contempt for violation of injunction) ("In criminal contempt the sanction is punitive in order to vindicate the authority of the court.").

These authorities, moreover, are consistent with the law of criminal contempt generally. In the context of a proceeding for criminal contempt based upon violations of an injunction, the United States Supreme Court stated: "That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice. The courts of the United States, when called into existence and vested with jurisdiction over any subject, at once became possessed of the power. . . . The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches. If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the judicial power of the United States would be a mere mockery." (Citation omitted; internal quotation marks omitted.) *Young* v. *United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 795–96, 107 S. Ct. 2124, 95 L. Ed.

2d 740 (1987);[16] see also R. Goldfarb, The Contempt Power (1963) p. 9 ("[t]he power of courts to punish contempts is one which wends historically back to the early days of England and the crown").

These authorities belie the defendant's assertion that "[t]here is no case, and no authority, anywhere in the United States that supports an argument that a court has inherent power to impose criminal sanctions for behavior that does not actually occur in the courtroom." Unmistakably, our courts have such power, and Practice Book § 986 (4) reflects the exercise of that power.[17]

---

[16] This quotation makes untenable the defendant's argument that *Young* v. *United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987), is distinguishable because the prosecution for criminal contempt in that case rested upon a federal statute. Although the prosecution in *Young* was brought pursuant to 18 U.S.C. § 401 (3), which provides for criminal penalties for contempt of court, the court indicated that the power to punish for criminal contempt was an inherent judicial power, and that "[t]he manner in which the court's prosecution of contempt is exercised . . . may be regulated by Congress . . . ." Id., 799. Thus, contrary to the defendant's argument, the exercise of the court's contempt power in *Young,* as opposed to the manner of that exercise, was not dependent on the federal statute.

We also reject the defendant's attempt to distinguish *Young* on the basis that it involved only the power of the court to *initiate* a criminal contempt proceeding, but not to adjudicate such a proceeding. It would be bizarre, indeed, to hold that a court has the inherent power to initiate a criminal contempt proceeding for the purpose of vindicating its authority and dignity, but that its power to continue such a proceeding to completion, and thereby accomplish that end, is dependent on legislative action.

[17] The defendant's reliance on *Bloom* v. *Illinois,* 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968), is unavailing. In *Bloom* the United States Supreme Court held that the United States constitution requires a jury trial for criminal contempt punishable by more than six months imprisonment. Although Justice Scalia, alone among the current Justices, reads *Bloom* to hold also that a court has no inherent power to punish as criminal contempt the violation of an injunction; see *Young* v. *United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 823, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987) (Scalia, J., concurring); that view was specifically rejected by the majority of the court. See id., 796–97 n.8. In any event, even Justice Scalia's reading of *Bloom* would not control this case. That reading depended on Justice Scalia's interpretation of the limits of the judicial power under the United States constitution. It does not control the separation of powers provision of the Connecticut constitution.

We likewise reject the defendant's contention that enactments by the legislature have eroded inherent judicial authority over criminal contempts occurring outside the presence of the court. Neither General Statutes § 51-33 nor General Statutes § 51-33a; see footnotes 7 and 8; affects that inherent judicial power in any way. The origins of § 51-33 go back at least to 1821. *Moore* v. *State,* 186 Conn. 256, 260, 440 A.2d 969 (1982). We have long held that this statute governs only contempts of court committed in the court's presence, and does not affect contemptuous conduct committed outside that presence. *Welch* v. *Barber,* supra; *Huntington* v. *McMahon,* supra; *Rogers Mfg. Co.* v. *Rogers,* supra; see also 2 Z. Swift, supra.

Similarly, the enactment of § 51-33a in 1971 was not intended to displace the inherent power of the court to punish out-of-court contemptuous conduct. The purpose of § 51-33a was to comply with the mandate of the United States Supreme Court in *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971), in which the court held that due process requires, under certain extreme circumstances, that a criminal contempt be heard by a judge other than the one who was the target of the contemptuous in-court conduct. *Moore* v. *State,* supra. Section 51-33a does not affect the court's power regarding out-of-court conduct. Like § 51-33, it leaves that power to the course of the common law, and to our Practice Book provisions.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.