JUAN VASQUEZ *v.* THE SUPERIOR COURT OF THE
STATE OF CONNECTICUT, HARTFORD
JUDICIAL DISTRICT
(AC 28248)

Bishop, Harper and Dupont, Js.

Argued March 13—officially released July 17, 2007

*Aaron J. Romano*, with whom, on the brief, was *Cynthia M. Fernandez-Romano*, for the plaintiff in error.

*Robert J. Deichert*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the defendant in error.

*Opinion*

DUPONT, J. The primary issue posed by the plaintiff in error, Juan Vasquez (the plaintiff), in connection with his writ of error,[1] is whether the trial judge, before

[1] The writ of error was addressed to the Superior Court as the defendant in error because it was brought "against a judge of the superior court to contest a summary decision of criminal contempt by that judge . . . ." Practice Book § 72-3 (c).

Practice Book § 72-1 (a) provides in relevant part: "Writs of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court in the following cases . . . (2) a summary decision of criminal contempt . . . ." The writ was transferred by our Supreme Court, pursuant to Practice Book § 65-1, to this court.

whom the allegedly contemptuous behavior had occurred, could punish him for summary criminal contempt pursuant to General Statutes § 51-33[2] when he had been charged by information on the same date with a violation of General Statutes § 51-33a,[3] and, according to the judgment file, found guilty of the latter statute,[4] on the basis of the same behavior.[5] A resolution of the issue requires plenary review of both statutes, relevant rules of practice, decisional law and the particular undisputed facts. No case of which we are aware has directly answered the question.

I

The writ of error claimed various alternative relief, namely, a reversal of the judgment of summary criminal contempt, the entry of judgment of not guilty or a new trial before a jury and a different judge, or a reduction

[2] General Statutes § 51-33 provides: "Any court, including a family support magistrate, may punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner; but no court or family support magistrate may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both."

[3] General Statutes § 51-33a provides: "(a) Any person who violates the dignity and authority of any court, in its presence or so near thereto as to obstruct the administration of justice, or any officer of any court who misbehaves in the conduct of his official duties shall be guilty of contempt and shall be fined not more than five hundred dollars or imprisoned not more than six months or both.

"(b) No person charged with violating this section may be tried for the violation before the same judge against whom the alleged contempt was perpetrated."

[4] The information apparently was signed by the trial judge, but the judgment file was signed by the clerk of the court only. The information and the judgment file had the same date, which was the date of the summary criminal contempt finding and punishment by the trial judge. There is no indication in the record of the precise time the information or the judgment file was signed in relation to the time the summary proceeding was held, pursuant to which the plaintiff was punished for his behavior.

[5] The plaintiff also claims that he was denied due process of law because he was not allowed to cross-examine an adverse witness at the summary criminal contempt hearing and to obtain a one week continuance to present "acquitting-mitigating evidence." This claim is discussed in part II.

in the sentence imposed. The plaintiff's appellate brief sought vacation of the conviction. His reply brief sought dismissal of the "matter" on the ground that subject matter jurisdiction was lacking for the judge's finding and punishment for summary criminal contempt.

The first question is whether jurisdiction exists in this court to entertain the writ of error, as the appropriate vehicle for the claimed relief sought by the plaintiff on the facts of this unusual case. Whether we have jurisdiction to entertain the writ depends on our analysis of whether the trial judge properly conducted a summary criminal contempt proceeding pursuant to § 51-33.

The plaintiff's claim is that no subject matter jurisdiction existed to allow the judge to conduct a summary proceeding pursuant to § 51-33 when an information simultaneously alleged a violation of § 51-33a, a nonsummary proceeding. We begin our analysis by stating the obvious. The court had the power, or jurisdiction, to hear the general class of case, a summary criminal contempt pursuant to § 51-33. The plaintiff conceded this at oral argument.

Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented to it. It exists if the court has the power to hear and determine cases of the general class to which the particular proceeding belongs. *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 6–7, 917 A.2d 966 (2007); *Sastrom* v. *Psychiatric Security Review Board*, 100 Conn. App. 212, 216–17, 918 A.2d 902 (2007). If a tribunal has the authority to decide the class of case, the issue of jurisdiction should be resolved in favor of its existence. *Spencer* v. *Star Steel Structures, Inc.*, 96 Conn. App. 142, 150, 900 A.2d 42, cert. denied, 280 Conn. 914, 908 A.2d 539 (2006).

Subject matter jurisdiction should not be confused with the scheduling of a case, or its assignment to a particular judge, which may relate to a recusal of a judge for bias or prejudice or statutory incapacity, as provided in § 51-33a. The trial judge in this case had the power to conduct a summary criminal contempt hearing immediately, pursuant to § 51-33 or to postpone a criminal contempt hearing, pursuant to § 51-33a, if he deemed it necessary. See Practice Book §§ 1-16 through 1-19.[6] Recusal relates to the impropriety of a particular judge to listen to a particular case because of bias that

[6] Practice Book § 1-16 amplifies General Statutes § 51-33 and provides for summary criminal contempt: "Misbehavior or misconduct in the court's presence causing an obstruction to the orderly administration of justice shall be summary criminal contempt, and may be summarily adjudicated and punished by fine or imprisonment, or both. Prior to any finding of guilt, the judicial authority shall inform the defendant of the charges against him or her and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of summary criminal contempt by presenting evidence of acquitting or mitigating circumstances. Upon an adjudication, the judicial authority shall immediately impose sentence of not more than one hundred dollars, or six months imprisonment, or both for each contumacious act. Execution of any sentence during the pendency of a trial or hearing may be deferred to the close of proceedings."

Practice Book § 1-17 provides for the deferral of criminal contempt proceedings in some instances: "The judicial authority should defer criminal contempt proceedings when: (1) the misconduct does not rise to an obstruction to the orderly administration of justice; (2) the judicial authority has become personally embroiled; (3) the misconduct did not occur in the presence of the court; and (4) the judicial authority does not instantly impose summary criminal contempt upon the commission of the contumacious act."

Practice Book § 1-18 provides: "A criminal contempt deferred under Section 1-17 shall be prosecuted by means of an information. The judicial authority may, either upon its own order or upon the request of the prosecuting authority, issue a summons or an arrest warrant for the accused. The case shall proceed as any other criminal prosecution under these rules and the General Statutes. The sentence shall be pronounced in open court and shall not exceed six months imprisonment or a fine of five hundred dollars, or both, for each contumacious act."

Practice Book § 1-19 provides: "The trial and all related proceedings upon which nonsummary contempt proceedings are based shall be heard by a judicial authority other than the trial judge or the judicial authority who had either issued the order which was later disobeyed or deferred criminal contempt proceedings under Section 1-17."

places the judge's impartiality in question. *LaBow* v. *LaBow*, 13 Conn. App. 330, 333–34, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). Recusal may also be statutory, as provided in § 51-33a and in the statute's amplification in Practice Book §§ 1-17 and 1-19. Recusal, the disqualification of a particular judge, is unrelated to jurisdiction, the power to hear a particular type of case.

In this case, if § 51-33a applied, the recusal would be a mandatory statutory disqualification of a particular judge, unrelated to the general power of the Superior Court to hear that particular class of case. Here, the judge had jurisdiction to hear both § 51-33 and § 51-33a cases. The question for the judge was which statutory avenue to pursue, one resulting in a summary proceeding or the other in a postponement of the matter, to be heard by another judge. Because none of the conditions outlined in Practice Book § 1-17[7] applied, there was no reason for recusal, and the judge proceeded with a summary criminal contempt proceeding, pursuant to Practice Book § 1-16 and General Statutes § 51-33.

Before describing the facts that illuminate the case, we note that the plaintiff admits that no claim or motion for a continuance of the summary criminal contempt proceeding was made on the basis of the fact that the information charged a violation of § 51-33a, thereby arguably precluding a summary criminal contempt proceeding, pursuant to § 51-33. He correctly claims, however, that a jurisdictional argument may be raised at any time. See *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 117, 891 A.2d 106 (2006).

[7] The plaintiff concedes that the judge was not personally embroiled in the behavior of the plaintiff. The other three conditions for deferral did not exist. There *was* an obstruction to the orderly administration of justice, the misconduct did occur in the judge's presence and the judge did impose summary criminal contempt punishment.

Certain facts are relevant to a determination of our jurisdiction to afford relief by way of a writ of error. The plaintiff was in court to argue his motion to withdraw his guilty pleas on the day the behavior occurred. The transcript reveals that immediately after the court denied the plaintiff's motion to withdraw his pleas, he struck his counsel, attorney Michael Isko, causing him to fall beneath the prosecutor's table in the courtroom. Prior to the denial of the motion, the plaintiff had complained to the court about the advice and performance of his counsel and had stated that he should be able to withdraw his plea because of "[i]neffective assistance of counsel . . . ." The plaintiff had previously referred his complaint about his counsel to the statewide grievance committee. He told the court that his counsel was "in direct violation of the attorney's oath and numerous, numerous rules of the professional conduct . . . ." Immediately after striking his counsel, the plaintiff stated: "Fucking ass motherfucker. I'm going to fuck your ass up, man. Let me go, man." The ensuing events and comments of the court are best described by quoting from the transcript.[8]

---

[8] The transcript reads:

"The Court: Take him out. Take him out.

"The Marshal: We need assistance in Red Court.

"The Court: Take him out.

"([The plaintiff] removed from courtroom)

"The Court: All right. Court is in session. Everybody be seated and be quiet. Now, I want everybody to be quiet. Mr. Isko, are you all right? Do you want—well, Mr. Isko is just leaving. But I want to put something on the record. He can augment it later on if he wishes to. . . .

"I saw [the plaintiff] raise his hand, his right hand, Mr. Isko was to his right side, and he punched Mr. Isko in the face with his right hand, the arm closest to Mr. Isko. It was a solid hit. I'm not sure if I saw Mr. Isko go down or not. I think he went down.

"I'll allow—Mr. Isko left, and, apparently, he wants to compose himself. . . . The [plaintiff] was taken from the courtroom by force. . . .

"Now, the court is going to continue on. I want everyone to remain quiet. . . .

"Also the record will reflect that the courtroom—I'm not going to say it's full, but there has to be at least fifty citizens here. And it certainly disrupted the business of this court. There has got to be more than fifty citizens that

During the afternoon, on the same day, different counsel, Aaron J. Romano, a special public defender, appeared for the plaintiff. At that time, the plaintiff was willing to come into the courtroom of his own accord. Continuing with the matter, the judge noted that he had put certain observations on the record during the morning session when the behavior of the plaintiff occurred but did not elaborate then because the plaintiff and his counsel were not present.[9]

are here. All right.

"Marshal, would you get me a cup of water? Okay. There's some coughing here. Was pepper spray used?

"The Marshal: Yes.

"The Court: Oh. Now, I—I thought it was me. Okay. All right. Resuming the call of the docket."

[9] The transcript of the afternoon session reads:

"The Court: During the luncheon—I did not see Mr. Isko again during the morning session. During the luncheon recess, I called the public defender's office to talk to Mr. Isko, and I was advised by, I assume staff there, that Mr. Isko was gone for the day. It was then that I was advised . . . that Mr. Isko would not be in and that they were requesting that you [reference to Romano] appear for [the plaintiff]. At 2 p.m. or shortly thereafter, you did come to my chambers along with members of the prosecutorial staff and indicated that, either at that time or shortly thereafter, that the [plaintiff] did not want to appear in the courtroom, and I wasn't going to force him to come into the courtroom, and we discussed the circumstances and time flies, but it brought us to the 3:20 p.m. time, which it is now. And the reason why I want to put it on the record is because *under summary contempt, I think it's important that the judge act summarily as the case law, statute and Practice Book require.* . . .

"[The Plaintiff's Counsel]: Your Honor, if I can just make one request before we proceed.

"The Court: Of course. . . .

"[The Plaintiff's Counsel]: And that is for a deferral of proceedings under § 1-17 of the Practice Book. And the reason for that deferral, Your Honor, is because, again, as you stated on the record, I came here about two o'clock and was caught up as best as I could between yourself and two members of the prosecutorial staff before I was able to go down and speak with [the plaintiff]. And upon speaking with [the plaintiff], there was some mental health issues that came to light during the course of my interview with him that he made me aware of. It's my understanding . . . that he is currently on some type of medicine that is supposed to modify or in some way affect his behavior and that he has been on several different medicines that have been changed during the course of his stay at the department of correction.

After the punishment was imposed by the court, the plaintiff was faced with a procedural dilemma with regard to his next step if he chose to contest his sentence of six months to serve in jail. If he filed a direct appeal, claiming that he was denied the rights to cross-examine and to present evidence and other guarantees

With that in mind, I believe that there may be some type of diminished capacity issue or defense that I would like to be able to, at the very least, investigate. I'm only asking for a deferral of proceedings for one week in order to obtain his prison medical file to determine whether or not there is any issue of that nature before we proceed. . . .

"The Court: *That's not in the nature of a summary criminal contempt,* Counselor. *And if you read* [*Practice Book* §] *1-17, it's not applicable here.* The court is going to deny your request. . . . *We're proceeding under* § *1-16 of the Practice Book.* And I want to give you an opportunity, Mr. Vasquez, to show reasons why you should not be judged in contempt and stating anything you think appropriate [or] relevant to why you should not be found in contempt and you should not be sanctioned in any way. You can stay seated, sir. Take your time.

"[The Plaintiff]: Throughout the whole proceedings and as long as I known that attorney, I felt he was out to get me. . . .

"The Court: . . . The [plaintiff] was facing forward, facing the court. These are my observations and my observations alone. . . . What struck me is that there was no interaction between the [plaintiff] and Mr. Isko.

"Attorney Isko was standing to the right of [the plaintiff]. Both were facing forward. I didn't even see [the plaintiff] glance in the direction of Mr. Isko. In fact, I believe that [the plaintiff] was looking forward at the time. What I did see was suddenly, a sudden movement of his right arm, without any interaction between he and Mr. Isko, without any provocation that I could discern because they weren't even looking or interacting at the time; [the plaintiff] raise[d] his right arm, it appeared to me in a violent manner, and struck attorney Isko in the face . . . . I saw Mr. Isko fall to the ground on his backside behind the state's attorney's table. The [plaintiff] in my opinion did not turn to face Mr. Isko to deliver the blow.

"It should be noted that the right hand of the [plaintiff], the one used to effectuate the blow, appears to be wrapped in Ace bandages. I'm advised by the marshals that there's either a plaster cast or a hardened substance, whether it's plastic, whatever, I don't know, but there is a harder substance under the—I'm not going to examine it now. I don't think there's a need—under the Ace bandage. That's the area I saw meet Mr. Isko's face.

"Multiple marshals converged on the [plaintiff] in an effort to remove [him] from the courtroom. It appeared to me that [he] resisted. A multitude of marshals, it could be five, six or seven were all around [the plaintiff], and they slowly shuffled [him] to the lockup. It's clear to me that the [plaintiff] was resistant. Apparently, pepper spray was administered by one

of due process as provided for in nonsummary criminal contempt proceedings brought pursuant to § 51-33a, he risked dismissal on the ground that he should have brought a writ of error because he sought redress arising from a judgment of summary criminal contempt rendered pursuant to § 51-33. See *State* v. *Melechinsky*, 36 Conn. Sup. 547, 550–51, 419 A.2d 900 (1980). If he opted to bring a writ of error, as he did, he risked dismissal of it by this court because he should have filed a direct appeal from the judgment of guilty in violation of § 51-33a, as stated in the judgment file. See

---

or more of the marshals in the area of the lockup.

"Certainly, this court was disrupted, not only by the behavior of [the plaintiff], but there was a residue of the pepper spray that emanated into the courtroom. And for virtually, if not all, a good substantial part of the morning session, the audience, the members of the public, and the staff and the court were coughing and having an effect from the pepper spray. This is all attributable to the [plaintiff]. . . .

"The court thought the interruption was such a grievous nature that the court considered ordering a recess till order could be restored. But the court upon reflecting thought it would be better if the court maintained the public in their seats and continue with the courtroom, the morning session. The Court did that. Certainly, the activity of [the plaintiff] merited a break in the proceedings and a recess. I elected not to have the recess. I thought that would be a surer way of maintaining the members of the public in their seats because it was clear to me everybody was aghast, and some members of the public stood up. They were shocked. . . . Also, as far as any disruption in the administration of justice, Mr. Isko left. . . . I infer from reasons of this assault. He didn't finish the cases he had. That is further interruption of the administration of justice for the day. . . .

"Mr. Vasquez, I find you guilty beyond a reasonable doubt of criminal contempt of this courtroom and that your conduct caused an obstruction to the administration of justice in the following ways: The disruption you created by assaulting in open court, in the well of the court, your attorney, is outrageous and egregious behavior. That, in and of itself, is sufficient to find a disruption in the administration of justice. There were fifty-seven people here in the audience alone. That certainly caused disruption not only to the court and the administration of the court's business in this day, but certainly in their business they had before the court. . . .

"Plus, the residual effect of the pepper spray and plus the fact that Mr. Isko could not complete his business, all contribute to—any one of which would have been sufficient, an intentional disruption in the administration of justice of this court. The court is going to impose a sentence of six months, the maximum I can by law, to serve." (Emphasis added.)

*State* v. *Murray,* 225 Conn. 355, 623 A.2d 60, cert. denied, 510 U.S. 821, 114 S. Ct. 78, 126 L. Ed. 2d 46 (1993).

Paragraph three of the writ of error provides that the original charges underlying the proceedings during which the contempt was committed were two counts of solicitation to commit robbery in the first degree and assault in the first degree to which he had pleaded guilty under the *Alford* doctrine.[10] Paragraph seventeen states that the plaintiff "claims his right to this writ of error on the basis that [our Supreme Court] has held that the writ of error is the only means by which review of a judgment of summary criminal contempt may be obtained."[11] Paragraph 18 (g) states that the court "erred in finding the [plaintiff] in criminal contempt in violation of . . . § 51-33a where the proper procedure as delineated by the statute requires that charge to be tried by a different judge." Thus, the plaintiff simultaneously refers to both the judgment of summary criminal contempt, a violation of § 51-33, which had actually been rendered and the "paper" judgment pursuant to § 51-33a, as stated in the judgment file.

A writ of error is a separate and distinct review procedure, not to be confused with a statutory appeal. C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 9.1. If there is a right to appeal, a writ of error should not be brought; id., § 9.3; Practice Book § 72-1 (b); but if a summary criminal contempt is found, there is no right to an appeal; see C. Tait & E. Prescott, supra, § 9.4 (b); and a writ of

---

[10] See *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[11] The cases cited for this proposition in the writ of error are *Banks* v. *Thomas,* 241 Conn. 569, 585, 698 A.2d 268 (1997), and *In re Dodson,* 214 Conn. 344, 346, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990). Both cases involved summary criminal contempts, rather than nonsummary criminal contempts.

error must be sought. *Martin* v. *Flanagan*, 259 Conn. 487, 494, 789 A.2d 979 (2002); *Banks* v. *Thomas*, 241 Conn. 569, 585, 698 A.2d 268 (1997); *Ullmann* v. *State*, 230 Conn. 698, 703, 647 A.2d 324 (1994); *Wilson* v. *Cohen*, 222 Conn. 591, 595, 610 A.2d 1177; *Jackson* v. *Bailey*, 221 Conn. 498, 500, 605 A.2d 1350, cert. denied, 506 U.S. 875, 113 S. Ct. 216, 121 L. Ed. 2d 155 (1992); *In re Dodson*, 214 Conn. 344, 346, 572 U.S. 328, cert. denied sub nom. *Dodson* v. *Superior Court*, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990); *Naunchek* v. *Naunchek*, 191 Conn. 110, 113, 463 A.2d 603 (1983).

A summary adjudication pursuant to § 51-33 is a punishment and must be immediate, peremptory and not subject to suspension by a full range of appellate review. *McClain* v. *Robinson*, 189 Conn. 663, 669–70, 457 A.2d 1072 (1983). If the contempt occurs in the presence of the court, there is no written charge or complaint, the court from necessity is its own judge of the contempt, and the punishment is not subject to the full range of claims ordinarily available on direct appellate review. Id.; see also *Moore* v. *State*, 186 Conn. 256, 259, 440 A.2d 969 (1982). Summary criminal contempt proceedings, therefore, are not the functional equivalent of criminal prosecutions and do not require an information or any written charge. The summary nature of the proceeding is further exemplified by the fact that a review of such a proceeding may be had only by writ of error; see, e.g., *Martin* v. *Flanagan*, supra, 259 Conn. 494; which need not be answered and does not require any pleadings in opposition. Practice Book § 72-3 (h).

Section 51-33 gives jurisdiction to a court summarily and immediately to punish contempts occurring in its presence when a person behaves contemptuously or in a disorderly manner, whereas § 51-33a serves a different purpose, namely, the need for a continuance in some instances, as outlined in Practice Book § 1-17, in which event, the matter should be tried by a different judge.

*Moore* v. *State,* supra, 186 Conn. 260; see also *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 465–66, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971); Practice Book § 1-19. The two statutes overlap and allow a court either to resolve the matter summarily pursuant to § 51-33[12] or to defer action in some instances pursuant to § 51-33a.[13] The former applies to proceedings conducted immediately or soon after the conduct has occurred and requires no information or written charge, whereas the latter applies to postponed proceedings, requiring the usual panoply of procedural safeguards and pleadings.[14] See *Wilson* v. *Cohen,* supra, 222 Conn. 604; *Naunchek* v. *Naunchek,* supra, 191 Conn. 114–15 (discussion of difference between §§ 51-33 and 51-33a).

Contempts may be civil or criminal; Practice Book § 1-13A (b); and may be adjudicated summarily or non-summarily. In the present case, the court clearly had jurisdiction to proceed under § 51-33 because the behavior was legally a contempt, the punishment was authorized and the judicial authority was qualified. See *Jackson* v. *Bailey,* supra, 221 Conn. 500. If there is no need for immediate action, the judicial authority may postpone the matter, as provided in § 51-33a. Id., 514; see also Practice Book § 1-17. On the basis of our review of the transcript, we conclude that none of the conditions for deferral existed here. If the deferral is not mandated by § 51-33a or the rules of practice governing nonsummary criminal contempt, § 51-33 governs the

[12] See footnote 2.

[13] See footnote 3.

[14] The plaintiff briefly states in his brief that the interim between the morning session, when the behavior occurred, and the afternoon session when the behavior was punished, impaired a finding of immediacy of action and implied that the immediacy of punishment was not the judge's central concern. He cites no case to support his position. The need for summary adjudication is not disturbed by such a hiatus, however. See *Sacher* v. *United States,* 243 U.S. 1, 9, 725 S. Ct. 451, 96 L. Ed. 717 (1952); *In re Dodson,* supra, 214 Conn. 365–66.

contempt of court proceedings. *State* v. *Murray*, supra, 225 Conn. 366. The two statutes coexist with jurisdiction to punish pursuant to either but do not logically allow the same contemnor to be guilty of both for the same behavior.

In *Higgins* v. *Liston*, 88 Conn. App. 599, 609, 870 A.2d 1137, cert. denied, 276 Conn. 911, 886 A.2d 425 (2005), cert. denied, 546 U.S. 1220, 126 S. Ct. 1444, 164 L. Ed. 2d 143 (2006), an information charged the plaintiff with a violation of § 51-33a, and the judgment file stated that he violated that statute. *Higgins* v. *Liston*, Conn. Appellate Court Records & Briefs, January Term, 2005, Record pp. 7, 11. The *Higgins* court, after noting these facts, decided that the trial court nevertheless could proceed to punish the contumacious behavior summarily pursuant to § 51-33; see *Higgins* v. *Liston*, supra, 609 n.6; and upheld the summary criminal conviction after a review of the contemnor's writ of error. No claim was made in *Higgins*, as is made in this case, that the judgment file's recitation of a violation of § 51-33a created a lack of jurisdiction to decide the matter summarily or to review the summary criminal contempt by way of a writ of error. In *Higgins*, the writ of error alleged that the judge *was* personally embroiled and that § 51-33a required that a charge of a violation of that statute must be tried by a different judge. In the present case, the plaintiff concedes that there was no personal attack on the judge, and, further, we have concluded on the basis of the judge's remarks, that the judge intended to and did conduct a summary criminal contempt proceeding pursuant to § 51-33.

The *Higgins* decision resolved that a plaintiff does not have a due process right to be represented by counsel under the state and federal constitutions during a summary criminal contempt proceeding because the proceeding is not a criminal prosecution. Id., 613. "We will uphold a summary contempt conviction as long as

the court that imposed the sentence possessed jurisdiction to do so." Id., 615. Despite the fact that the plaintiff in *Higgins* was charged with, and the judgment file indicated a guilty finding of, a violation of § 51-33a; *Higgins* v. *Liston*, Conn. Appellate Court Records & Briefs, January Term, 2005, Record pp. 7, 11; the punishment he received, after a summary contempt proceeding pursuant to § 51-33, was upheld, after a review of his writ of error.

In the present case, the plaintiff, the prosecutor and the judge were aware that the summary criminal contempt proceeding was being conducted as though any punishment would be imposed pursuant to § 51-33 and the pertinent rule of practice. The judge, in fact, imposed a punishment in accordance with that statute.[15]

Summary criminal contempt is not a criminal offense requiring an information alleging the violation of a criminal statute. It is a unique, sui generis proceeding, not a criminal prosecution, with both statutory and common-law antecedents and not subject to the usual plethora of due process guarantees. When a proceeding is conducted as though it involved a particular legal theory with the knowledge and acquiescence of the parties and the judicial authority, the content of the judgment should be tested on that basis regardless of whether a complaining document alleged a different legal theory. See *Tedesco* v. *Stamford*, 215 Conn. 450, 457, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992); see also *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 97 Conn. App. 541, 563–64, 905 A.2d 1214, cert. denied, 280 Conn. 942,

---

[15] Although the judge apparently signed the information charging the plaintiff with a violation of § 51-33a, the information was superfluous given the fact that the judge conducted a hearing pursuant to § 51-33, which requires no information or written charge.

943, 912 A.2d 479 (2006). This is particularly the case when no complaining document was required at all.

We use the *Higgins* holding and the civil case precedent[16] to resolve the legal and procedural dilemma posed by the plaintiff in his writ of error. Here, there is a statutory variance between an unnecessary complaining document and a judgment file, and a judgment that was in fact rendered. No trial was ever held pursuant to the complaining document, and the judgment file erroneously refers to a violation as described in a complaining document for which no trial was ever held. We conclude, therefore, that the writ of error was the appropriate vehicle to attack the proceedings as conducted and that, accordingly, this court has jurisdiction to entertain the writ of error.

## II

The plaintiff argues that he was denied due process of law because he was not allowed to cross-examine an adverse witness at the summary criminal contempt hearing and because he was denied a one week continuance to present "acquitting-mitigating" evidence.

The principles governing such a hearing may be succinctly stated. The trial judge has wide discretion in evaluating the facts and circumstances; see *Ullmann v. State*, supra, 230 Conn. 721; the decision of the judge to punish a contemnor quickly when the effective administration of justice requires an immediate judicial response cannot be overturned when there was no personal embroilment on the part of the presiding judge; *Naunchek v. Naunchek*, supra, 191 Conn. 117; the judge may punish the offender on his or her own motion, solely on facts within the judge's knowledge; *Wilson v. Cohen*, supra, 222 Conn. 599; no witnesses other than

---

[16] "Our Supreme Court consistently has held that summary contempt proceedings are not criminal prosecutions." *Higgins* v. *Liston*, supra, 88 Conn. App. 610.

the judge are required in proof of the contempt; *McClain* v. *Robinson,* supra, 189 Conn. 666; and the contemnor need not be represented by counsel during the § 51-33 hearing. *Higgins* v. *Liston,* supra, 88 Conn. App. 613.

The plaintiff was represented by counsel but was not allowed to cross-examine an assistant state's attorney who had been permitted by the judge to testify as to what the assistant state's attorney saw at the time of the plaintiff's behavior, nor was the plaintiff allowed a one week continuance in order to resolve "intention" and "any mental health issues" arising from whether his medications were "right" or the "right dose."

The judge could have punished the plaintiff solely on facts within the judge's knowledge and did not need to allow others, such as the assistant state's attorney, to recount their observations. The transcript as quoted herein; see footnotes 8, 9; amply supports the judge's finding of contumacious behavior totally on the basis of his observations.

The one week deferral of proceedings, if granted, would have contravened the essence of the summary criminal contempt proceeding, namely, the necessity for a swift adjudication and resultant punishment for contemptuous or disorderly courtroom behavior. In view of the obstruction to the orderly administration of justice caused by the plaintiff's behavior, and witnessed by the judge, there was no reason for the deferral. None of the conditions listed in § 51-33a or Practice Book § 1-17 existed for a postponement of the proceedings. Furthermore, the judge had the opportunity to observe the plaintiff's mental condition to the time the plaintiff struck Isko and to hear the plaintiff's statements immediately after he knocked Isko down. The judge's observations were sufficient for him to gauge whether the plaintiff had the requisite intent to

behave as he did. On the basis of the judge's observations, he could infer that the plaintiff's conduct was wilful, which constitutes the requisite intent for punishment of a contemnor pursuant to § 51-33. *In re Dodson*, supra, 214 Conn. 359.

Before the judge pronounced the sentence, he asked the plaintiff if there was anything he wanted to state for the record. The plaintiff used the opportunity to state why he did not like Isko and then to state that he had "deep mental health issues . . . ever since [he] dealt with this attorney." He stated: "Isko should be here and my attorney should have—my attorney representing me now also should have at least a chance to cross-examine him." When asked if there was anything else he wanted to say, the plaintiff continued to complain about Isko and when asked for the third time if there was anything else, the plaintiff stated: "Yeah, I want to apologize to the court, everybody who witnessed it, because it was uncalled for. It was rude. And it won't happen again." The judge asked for the fourth time if the plaintiff had anything else to say to which he responded, "no . . . ."

The judge concluded that the plaintiff blamed Isko for his predicament rather than himself. Prior to the judge's finding the plaintiff guilty beyond a reasonable doubt of criminal contempt, the plaintiff continued to try to interject remarks about Isko while the judge was speaking. Other than a brief mention of his mental health condition as having been caused by Isko, the plaintiff did not indicate that his conduct was caused by anything other than his animosity toward his attorney.[17]

The judge granted Romano's motion for a continuance of the sentencing hearing for the plaintiff, although

---

[17] The judge's remarks clearly indicate that Isko did a very good job in his representation of the plaintiff.

the judge denied any continuance of the summary criminal contempt hearing. The judge did not abuse his discretion by denying a continuance of a § 51-33 hearing. We agree with the court that no continuance, on the basis for which it was sought, was warranted.

## III

Although the judgment file in this case recited a guilty finding by the court of a violation of § 51-33a in accord with the information, the judgment file is a clerical document and is not the judgment. *Lehto* v. *Sproul*, 9 Conn. App. 441, 445, 519 A.2d 1214 (1987). The pronouncement by the court, in this case a finding of punishment pursuant to § 51-33, *is* the judgment. See id. Judgment occurs when sentence is pronounced. The judgment file memorializes the judgment and is prepared and signed subsequent to the rendition of judgment. See *State* v. *Moore*, 158 Conn. 461, 466, 262 A.2d 166 (1969). In the present case, the judgment file was not signed by the judge. Because the judge had rendered judgment in accord with § 51-33, he would not have signed a judgment file indicating judgment rendered pursuant to § 51-33a. The judgment file is subject to a clerical correction to conform to what was, in fact, the judgment. *Jones Destruction, Inc.* v. *Upjohn*, 161 Conn. 191, 200, 286 A.2d 308 (1971). Even if no judgment file was prepared, a judgment is valid if the parties are aware of the provisions of the judgment.[18] *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 274, 471 A.2d 638 (1984).

In this case, the judgment file reflects a clerical error and does not correctly state the statutory reference or

---

[18] It is not clear that a judgment file need be prepared in a summary criminal contempt proceeding. See Practice Book §§ 6-3, 6-4. Due to the nature of a writ of error, namely, a review of errors of law only, and the fact that a judgment file may not have been necessary, neither the state nor the plaintiff sought a motion to correct the judgment file in the trial court, making cases such as *Varanelli* v. *Luddy*, 130 Conn. 74, 32 A.2d 61 (1943), inapposite.

the actual decision of the judge. As such, we must order it corrected. *Botass* v. *Botass,* 40 Conn. App. 733, 739, 673 A.2d 129 (1996); *Cioffoletti* v. *Planning & Zoning Commission,* 34 Conn. App. 685, 689, 642 A.2d 1220, cert. denied, 230 Conn. 916, 645 A.2d 1018 (1994); *Ravizza* v. *Waldie,* 3 Conn. App. 491, 493, 490 A.2d 90 (1985).

The judgment of summary criminal contempt is affirmed. The case is remanded for correction of the judgment file to conform it to the actual judgment rendered by the trial court, namely, a violation of § 51-33.

In this opinion the other judges concurred.