ANTHONY FURS *v.* SUPERIOR COURT, JUDICIAL
DISTRICT OF WATERBURY
(SC 18183)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.*

Argued May 27—officially released September 21, 2010

* The listing of the justices reflects their seniority status on this court as of the date of oral argument.

*Neal Cone,* senior assistant public defender, for the plaintiff in error.

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence Mariani,* senior assistant state's attorney, for the defendant in error.

*Opinion*

McLACHLAN, J. The plaintiff in error (plaintiff), Anthony Furs, brings this writ of error seeking reversal of the judgment of the trial court finding him in criminal contempt of court for refusing to testify in the trial of Alfredo Gonzalez, following the court's order granting the state's application to grant the plaintiff use immunity pursuant to General Statutes § 54-47a.[1] The plaintiff

---

[1] General Statutes § 54-47a provides in relevant part: "(a) Whenever in the judgment of . . . a state's attorney . . . the testimony of any witness . . . (1) in any criminal proceeding involving . . . any . . . class A . . . felony . . . demonstrates that he has no other means of obtaining sufficient information as to whether a crime has been committed or the identity of the person or persons who may have committed a crime, before a court or grand jury of this state or (2) in any investigation conducted by an investigatory grand jury . . . the state's attorney . . . with notice to the witness, after the witness has claimed his privilege against self-incrimination, [may] make application to the court for an order directing the witness to testify . . . .

"(b) Upon the issuance of the order such witness shall not be excused from testifying . . . on the ground that the testimony . . . required of him may tend to incriminate him . . . . No such witness may be prosecuted . . . on account of any transaction, matter or thing concerning which he is compelled to testify . . . and no testimony . . . so compelled . . . may be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence. . . ."

claims that the court improperly determined that the state may limit its offer of immunity to use immunity. Specifically, the plaintiff claims that § 54-47a requires the state to offer a witness both use immunity and transactional immunity before he or she may be compelled to testify. The plaintiff reasons that because the court improperly granted the state's application solely for use immunity, the court's subsequent order finding the plaintiff in contempt is invalid.[2] The state concedes that § 54-47a requires it to seek transactional immunity in its application to the court,[3] and argues that the state nonetheless may restrict its offer to use immunity pursuant to its inherent authority, derived from its "prosecutorial power" pursuant to article fourth of the constitution of Connecticut, as amended by article twenty-three of the amendments. Because the state has conceded that § 54-47a requires the state to seek a grant of transactional immunity, and because the state's inherent authority argument is unpreserved, we grant the plaintiff's writ of error.

At the outset, we set forth the relevant background information regarding immunity. Use immunity is defined as "[i]mmunity from the use of the compelled testimony (or any information derived from that testimony) in a future prosecution against the witness."

---

[2] The plaintiff also argues that the due process clause as well as the right against self-incrimination under article first, § 8, of the constitution of Connecticut mandate that the state grant a witness with a right against self-incrimination transactional and use immunity before it may compel the witness to testify. Because we conclude that the court improperly concluded that the state may, pursuant to § 54-47a, restrict its offer to use immunity, we do not address the plaintiff's constitutional claim.

[3] The state argues in its brief that § 54-47a does not require the state to seek a grant of transactional immunity in all circumstances. Rather, the state argues that § 54-47a permits the court to grant transactional immunity when the conditions enumerated in § 54-47a are satisfied. At oral argument, however, the state conceded that, in the present case, if the state were pursuing a grant of immunity under § 54-47a, it would be seeking transactional immunity.

Black's Law Dictionary (9th Ed. 2009).[4] Transactional immunity "protects a witness from prosecution for the offense to which the compelled testimony relates." *United States* v. *Nanni*, 59 F.3d 1425, 1431 (2d Cir.), cert. denied, 516 U.S. 1014, 116 S. Ct. 576, 133 L. Ed. 2d 499 (1995). Transactional immunity, therefore, is broader than use immunity. See *United States* v. *Turkish*, 623 F.2d 769, 775 (2d Cir. 1980) ("unlike transactional immunity, use immunity does not improve the legal position of the holder of the privilege; it leaves his legal rights precisely as they were before he testified"), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 800 (1981).

The record reveals the following facts and procedural history. On August 20, 2007, the plaintiff pleaded guilty to the murder of Samuel Tirado. At the hearing, the state set forth the facts of the case, including that, on May 6, 2006, the plaintiff shot Tirado at the behest of Gonzalez and Christian Rodriguez, in exchange for $2000. On October 26, 2007, the court, *Alexander, J.,* sentenced the plaintiff to a term of imprisonment of forty-seven years. On or about March 19, 2008, the plaintiff challenged the conviction in a petition for a writ of habeas corpus, which remains pending.

On May 5, 2008, the state called the plaintiff as a witness in the prosecution of Gonzalez for Tirado's murder. The court, *Miano, J.,* advised the plaintiff that, if the court found that he could not claim his fifth amendment privilege against self-incrimination and he refused to testify, he could be held in contempt and sentenced to six months imprisonment. The plaintiff

[4] Use immunity is also referred to as or in conjunction with derivative use immunity. For the purposes of this opinion, we refer to use and derivative use immunity as use immunity. Under federal law, a grant of use immunity is sufficient under the fifth amendment to compel a witness to testify. *Kastigar* v. *United States*, 406 U.S. 441, 453, 92 S. Ct. 1653, 32 L. Ed. 2d 212, reh. denied, 408 U.S. 931, 92 S. Ct. 2478, 33 L. Ed. 2d 345 (1972).

stated that he would "take the [six] months," and the court continued the matter to allow him to speak with an attorney.

On May 7, 2008, the plaintiff's counsel informed the court that the plaintiff had filed a petition for a writ of habeas corpus challenging his guilty plea. The court ruled that, in light of the pending habeas petition, the plaintiff had a fifth amendment privilege against self-incrimination. The plaintiff took the witness stand and, in response to the prosecutor's question regarding Tirado's death, invoked his fifth amendment privilege. The prosecutor then indicated that he was prepared to offer the plaintiff immunity, such that "anything he says from the witness stand cannot be used in any subsequent prosecution against him, and cannot lead derivatively to the discovery of any evidence that can be used against him. It does not give him a pass on the homicide should he win his habeas . . . ." The prosecutor filed a written application (application) in which he asked the court to grant the witness immunity pursuant to § 54-47a. The application was entitled "Application for Court Order Directing Witness To Testify Pursuant to [§] 54-47a," and concluded with the following: "Wherefore, pursuant [to] [§] 54-47a . . . application is hereby made for an order directing that [the plaintiff] testify in [*State* v. *Gonzalez*] conditioned upon receipt of immunity as set forth in [§] 54-47a . . . ." The application also included a proposed order that stated: "The foregoing application having been made and considered it is hereby ordered that [the plaintiff] give testimony and evidence in the matter of [*State* v. *Gonzalez*]. This immunity grant is for 'use' immunity. No testimony given by [the plaintiff] may be used against him in any fashion or in any proceeding. No evidence discovered as a result of or otherwise derived from said evidence or testimony so compelled may be used against him in any proceeding, except that the [plaintiff] shall not be immune from

prosecution for perjury or contempt committed while giving testimony. Furthermore, [the plaintiff] shall not be immune from prosecution for any offense related to his testimony for which there existed evidence known to the prosecution prior to his testimony. He also shall not be immune from the use of evidence against him that was gathered independent of his testimony."

The plaintiff's counsel argued that because the plaintiff already had pleaded guilty to Tirado's murder and had filed a habeas petition, the state should immunize him for all charges relating to the murder in the event that he is successful in the habeas petition. In other words, the plaintiff's counsel argued that the use immunity offered in the application and proposed order was insufficient, and that, unless the state was willing to offer the plaintiff transactional immunity, he could not be compelled to testify. The prosecutor argued that the offer of use immunity was sufficient because it "insulates [the plaintiff] in terms of his testimony ever being used against him." The court granted the application for immunity, "limited to use immunity as is specified in the application."[5] The court also specified that, as stated "in the application . . . no derivative use [of the testimony] can be made."

The court then concluded that the grant of immunity removed the possibility of incrimination, and with it, the plaintiff's fifth amendment privilege. The court ordered the plaintiff to testify to the events of May 5 and 6, 2006. When the plaintiff refused to do so and claimed his fifth amendment privilege against self-incrimination, the court found the plaintiff in contempt

---

[5] Although the state made its application pursuant to § 54-47a, the court's order limited the offer of immunity to use immunity.

of court in violation of General Statutes § 51-33,[6] and sentenced him to a term of six months imprisonment, consecutive to his sentence of forty-seven years for murder.

In this writ of error, the plaintiff claims that the court improperly concluded that the state, pursuant to § 54-47a, could restrict its offer of immunity to use immunity.[7] As we have stated previously in this opinion, the

---

[6] General Statutes § 51-33 provides in relevant part: "Any court . . . may punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner; but no court . . . may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both."

Although the judgment file indicates that the plaintiff violated General Statutes § 51-33a, the facts and proceedings indicate that § 51-33 is the applicable provision. Section 51-33 applies to proceedings conducted "immediately or soon after the [contemptuous] conduct has occurred and requires no information or written charge"; *Vasquez* v. *Superior Court*, 102 Conn. App. 394, 406, 925 A.2d 1112, cert. denied, 284 Conn. 915, 931 A.2d 935 (2007); whereas § 51-33a applies to proceedings that are postponed for some reason. See Practice Book § 1-17. In addition, proceedings pursuant to § 51-33a, unlike proceedings pursuant to § 51-33, are tried before a different judge and require "the usual panoply of procedural safeguards and pleadings." *Vasquez* v. *Superior Court*, supra, 406; see also *Wilson* v. *Cohen*, 222 Conn. 591, 603–604, 610 A.2d 1177 (1992) (discussing distinctions between § 51-33 and § 51-33a). In the present case, as in *Vasquez*, the contempt proceedings were not deferred and "none of the conditions for deferral existed here. If the deferral is not mandated by § 51-33a or the rules of practice governing nonsummary criminal contempt, § 51-33 governs the contempt of court proceedings." *Vasquez* v. *Superior Court*, supra, 406–407. Ordinarily, we would remand the case to correct the judgment file; id., 412–13; but we need not do so given our disposition granting the writ of error in this case.

[7] The state claims that the plaintiff should not be permitted to argue that the trial court improperly granted the state's application for use immunity pursuant to § 54-47a because he argued before the trial court that the immunity offer was insufficient due to his particular circumstances, namely, that he already had pleaded guilty to the murder and had a pending habeas petition challenging that plea. This argument is unavailing because the issue before the trial court was litigated by the state on the basis of § 54-47a. The state filed the application and proposed order pursuant to § 54-47a and made no other claim for its authority to offer immunity to the plaintiff. Therefore, the plaintiff is entitled to challenge the state's offer of immunity solely on the basis of the parameters of § 54-47a.

state conceded at oral argument before this court that it would be seeking transactional immunity if it were pursuing a grant of immunity under § 54-47a. See footnote 3 of this opinion. This concession is consistent with our interpretation of § 54-47a in *State* v. *Williams*, 206 Conn. 203, 212, 536 A.2d 583 (1988), in which we stated: "The sparse legislative history of § 54-47a clearly demonstrates that the General Assembly intended to provide both transactional and derivative use immunity to witnesses compelled under the statute to testify. Representative Lawrence Merly in discussing the statute in the House of Representatives remarked that 'not only is the witness granted immunity from prosecution, but also any evidence which might be derived from his testimony cannot be used against him.' 13 H.R. Proc., Pt. 8, 1969 Sess., p. 3628."

On appeal, the state recasts its argument, asserting for the first time that it has inherent authority, pursuant to its "prosecutorial power," as vested by article fourth of the constitution of Connecticut, as amended by article twenty-three of the amendments, to afford a witness use immunity only. The state further argues that, in passing § 54-47a, the legislature did not intend to eliminate or limit the state's inherent authority. The plaintiff responds that the state does not have the authority to compel a witness to testify following a grant of immunity unless the state is proceeding pursuant to a statute authorizing that grant of immunity. We decline to review the state's unpreserved claim because it would prejudice the plaintiff.

Our careful review of the record in the trial court reveals that the state argued that the use immunity offered to the plaintiff in the state's application for immunity was sufficient to address the plaintiff's fifth amendment privilege. At oral argument before this court, the state contended that the application, specifically the proposed order, as well as the discussion before the trial court, indicated that the state was seek-

ing a grant of immunity pursuant to an authority other than § 54-47a. We disagree.

Although the prosecutor stated in the trial court that he "as the government's attorney, can take away" the plaintiff's fifth amendment right upon a grant of immunity, this statement did not, in the context of the discussion before the trial court, indicate that the state was offering a ground for its authority to seek immunity for a witness other than § 54-47a. Indeed, pursuant to § 54-47a, it is the prosecutor who has the authority to apply for a grant of immunity from the court. At no time did the prosecutor raise a colorable claim that he had alternate grounds for his authority to seek immunity, such as inherent authority pursuant to the "prosecutorial powers" of the chief state's attorney. The record clearly indicates that neither the trial court nor the plaintiff's counsel understood that the prosecutor was claiming that he had authority to determine the type of immunity offered to the plaintiff pursuant to his inherent authority. See, e.g., *Perricone* v. *Perricone*, 292 Conn. 187, 198–99 n.9, 972 A.2d 666 (2009) (claim properly preserved for review where trial court understood that defendant had raised claim and addressed claim in memorandum of decision). Instead, throughout the discussion, the court, the prosecutor and the plaintiff's counsel referred to the application and proposed order, which repeatedly reference § 54-47a. Therefore, we conclude that the state's claim regarding its inherent authority to offer a witness immunity was not properly raised in the trial court.

Additionally, the state did not raise this claim as an alternate ground for affirmance in a filing pursuant to Practice Book § 63-4 (a) (1),[8] and did not designate it

[8] Practice Book § 63-4 (a) (1) provides in relevant part: "If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues. . . ."

as such in its brief. We have the discretion to review such claims; see, e.g., *Achillion Pharmaceuticals, Inc.* v. *Law*, 291 Conn. 525, 528 n.5, 970 A.2d 57 (2009); but do not review them when such review would prejudice the opposing party. See, e.g., *Dickinson* v. *Mullaney*, 284 Conn. 673, 682 n.4, 937 A.2d 667 (2007) ("[w]e have refused to consider an issue not contained in a [statement of alternate grounds for affirmance] only in cases in which the opposing party would be prejudiced by consideration of the issue" [internal quotation marks omitted]). In the present case, it would be improper for us to review the state's unpreserved claim because we cannot presume that the trial court would have accepted the state's claim of an independent source of authority to grant use immunity only. Nor should we presume that the plaintiff, who claims that he refused to testify on the advice of counsel, would have refused to testify if he had been informed that the state had inherent authority to offer use immunity, which would be sufficient under the fifth amendment to compel his testimony and that this would not be violative of the statute. See *Kastigar* v. *United States*, 406 U.S. 441, 453, 92 S. Ct. 1653, 32 L. Ed. 2d 212, reh. denied, 408 U.S. 931, 92 S. Ct. 2478, 33 L. Ed. 2d 345 (1972). Thus, because the plaintiff could be prejudiced by our review of the state's unpreserved claim we do not address it.

The writ of error is granted, the judgment is reversed, and the case is remanded to the trial court with direction to vacate the plaintiff's conviction of criminal contempt of court.

In this opinion the other justices concurred.