******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY CRUZ *v.* SUPERIOR COURT,
JUDICIAL DISTRICT OF DANBURY
(AC 37816)

DiPentima, C. J., and Mullins and Norcott, Js.

*Argued December 7, 2015—officially released March 1, 2016*

(Appeal from Superior Court, judicial district of
Danbury, Pavia, J.)

*Jennifer B. Smith*, with whom, on the brief, was
*Walter C. Bansley IV*, for the plaintiff in error.

*James A. Killen*, senior assistant state's attorney,
with whom, on the brief, was *Stephen J. Sedensky III*,
state's attorney, for the defendant in error.

*Opinion*

NORCOTT, J. The primary issue raised in this writ of error is whether the trial court erred by holding the plaintiff in error (plaintiff) in criminal contempt of court for invoking his fifth amendment privilege against self-incrimination and refusing to testify despite a grant of transactional immunity under General Statutes § 54-47a.[1]

The plaintiff was convicted of criminal contempt in violation of General Statutes § 51-33a and sentenced to six months imprisonment, to be served consecutively to a sentence of seven years and five months imprisonment, followed by five years of special parole, that he already was serving after having pleaded guilty to other charges. The plaintiff's principal claim on appeal is that his conviction for criminal contempt violated his fifth amendment privilege against self-incrimination because the transactional immunity granted to him under § 54-47a would not protect him from impeachment through his trial testimony at any subsequent trial on his petition for a writ of habeas corpus.[2] The plaintiff further claims that the court erred by finding him in criminal contempt because his conduct was not directed against the dignity and authority of the court, and it did not obstruct the orderly administration of justice. We disagree and, accordingly, dismiss the writ of error.

The following facts, either found by the court or undisputed in the record, are relevant to our disposition of the plaintiff's claim. The plaintiff originally was charged along with a codefendant in connection with plans to commit a burglary. The plaintiff subsequently pleaded guilty to those charges and was serving his sentence when called as a witness for the state during the trial of his codefendant.[3] The plaintiff informed his attorney at the courthouse that he would not testify. The court ordered the plaintiff to testify following a grant of statutory transactional immunity. After having been canvassed by the court and advised by his attorney of the potential consequences of continuing to refuse to testify, he nevertheless refused to answer all questions asked of him by the state. All of these events occurred in the court's presence, while it was in session. The court found that the plaintiff's behavior "affected the administration of justice with regard to the court proceeding and the trial that [was] at hand . . . ." Accordingly, the court found the plaintiff in criminal contempt of court and sentenced him to six months imprisonment, to be served consecutively to the sentence he was serving for the charges to which he had pleaded guilty. When the court asked the plaintiff's counsel to explain why the plaintiff should not be held in contempt, the plaintiff's counsel argued unsuccessfully that the immunity granted the plaintiff did not protect him adequately from self-incrimination because it exposed him to the risk of impeachment at the pending trial on his

habeas corpus petition. The plaintiff brought this writ of error from the court's judgment of criminal contempt.

"Criminal contempt is conduct which is directed against the dignity and authority of the court. . . . Sanctions [for criminal contempt] are imposed in order to vindicate that authority. . . . The inherent power of the court to punish as a criminal contempt conduct that constitutes an affront to the court's dignity and authority is expressly recognized in our statutes; see General Statutes § 51-33a (a); and in our rules of practice. See Practice Book § 1-14." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Hardy* v. *Superior Court*, 305 Conn. 824, 834–35, 48 A.3d 50 (2012).

Section 51-33a (a) provides that "[a]ny person who violates the dignity and authority of any court, in its presence or so near thereto as to obstruct the administration of justice, or any officer of any court who misbehaves in the conduct of his official duties shall be guilty of contempt and shall be fined not more than five hundred dollars or imprisoned not more than six months or both."

The present case involves a review of a summary criminal contempt proceeding that comes before us on a writ of error, which is the sole method of review of such proceedings. See *Martin* v. *Flanagan*, 259 Conn. 487, 494, 789 A.2d 979 (2002). "The scope of our review reaches only those matters appearing as of record." (Internal quotation marks omitted.) Id. Our review of a judgment of criminal contempt customarily considers "three questions, namely, (1) whether the designated conduct is legally susceptible of constituting a contempt . . . (2) whether the punishment imposed was authorized by law . . . and (3) whether the judicial authority was qualified to conduct the hearing."[4] (Citations omitted; internal quotation marks omitted.) Id.

The parties dispute only whether the first of these three prongs was satisfied in this case. This prong, whether the designated conduct is legally susceptible of constituting a contempt, here, turns solely upon whether the plaintiff had a valid privilege against self-incrimination under the fifth amendment to the federal constitution. See id. (concluding that holding plaintiff in error in contempt improper when he had validly invoked privilege against self-incrimination). This latter inquiry turns upon whether the plaintiff received a legally sufficient guarantee of immunity from prosecution before being compelled to testify. See *Kastigar* v. *United States*, 406 U.S. 441, 453, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972) (holding that granting of use and derivative use immunity is sufficient to compel testimony over claim of privilege).

The fifth amendment to the federal constitution provides, in relevant part, that "[n]o person . . . shall be

compelled in any criminal case to be a witness against himself . . . ." U.S. Const., amend. V. "The privilege . . . protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar* v. *United States*, supra, 406 U.S. 444–45. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman* v. *United States*, 341 U.S. 479, 486–87, 71 S. Ct. 814, 95 L. Ed. 1118 (1951).

The privilege against compulsory self-incrimination comprehended by the fifth amendment can be overcome, however, by a grant of immunity coextensive with the scope of the privilege. See *Kastigar* v. *United States*, supra, 406 U.S. 453. In *Kastigar*, the United States Supreme Court rejected a challenge to the federal witness immunity statute, 18 U.S.C. § 6002, which provides use and derivative use immunity. Id. The court reasoned: "The statute's explicit proscription of the use in any criminal case of testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) is consonant with Fifth Amendment standards. We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being forced to give testimony leading to the infliction of penalties affixed to . . . criminal acts. Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) Id. Transactional immunity is broader than use immunity. *United States* v. *Turkish*, 623 F.2d 769, 775 (2d Cir. 1980), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 800 (1981). But *Kastigar* made clear that only the latter need be granted in order to overcome the privilege against self-incrimination. *Kastigar* v. *United States*, supra, 453.

Despite the fact that the fifth amendment privilege

against self-incrimination can be overcome by use and derivative use immunity, the legislature of this state has chosen to confer upon its courts the power to compel witnesses to testify on the granting of transactional immunity in certain circumstances. See General Statutes § 54-47a. Our Supreme Court has interpreted § 54-47a to require that if a trial court grants an application under the statute, the court must order transactional immunity for the witness. *Furs* v. *Superior Court*, 298 Conn. 404, 411, 3 A.3d 912 (2010).

In this case, the court granted the plaintiff transactional immunity, satisfying both § 54-47a and the fifth amendment.[5] The plaintiff has premised his claim on the fifth amendment alone,[6] and the rule of *Kastigar* v. *United States*, supra, 406 U.S. 453, therefore controls: "[I]mmunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege." Id. Because the plaintiff received transactional immunity, which is even broader than use immunity, he no longer had a privilege not to testify against himself. His refusal to do so was therefore "legally susceptible of constituting a contempt . . . ." (Internal quotation marks omitted.) *Martin* v. *Flanagan*, supra, 259 Conn. 494.

The plaintiff nonetheless argues that transactional immunity was not coextensive with his privilege against compulsory self-incrimination because transactional immunity did not protect him from the risk that his testimony at the trial might be used to impeach him in his subsequent trial on his petition for a writ of habeas corpus. We disagree for the following reasons. First, as we stated previously in this opinion, to overcome the privilege requires only that use immunity be granted. *Kastigar* v. *United States*, supra, 406 U.S. 453. The plaintiff here received transactional immunity, which is even broader than use immunity. Second, the privilege against compulsory self-incrimination does not protect against the noncriminal consequences of incriminating testimony: "This Court has never held . . . that the Fifth Amendment requires immunity statutes to preclude all uses of immunized testimony. Such a requirement would be inconsistent with the principle that the privilege does not extend to consequences of a noncriminal nature, such as threats of liability in civil suits, disgrace in the community, or the loss of employment." *United States* v. *Apfelbaum*, 445 U.S. 115, 125, 100 S. Ct. 948, 63 L. Ed. 2d 250 (1980). Impeachment as a witness in a civil proceeding, such as a trial on a petition

for a writ of habeas corpus, is a noncriminal consequence, to which the protections of the privilege against compulsory self-incrimination axiomatically does not apply.

The plaintiff also claims that the trial court erred by finding him in contempt because his conduct was not directed against the dignity and authority of the court, and it did not obstruct the orderly administration of justice. The plaintiff attempts to distinguish his own case from two cases in which the plaintiffs had outbursts or otherwise interrupted the proceedings through boisterous conduct. See *Hardy* v. *Superior Court*, supra, 305 Conn. 824; *Brown* v. *Regan*, 84 Conn. App. 100, 851 A.2d 1249, cert. denied, 271 Conn. 926, 859 A.2d 577 (2004). The plaintiff's argument fails because his attempt to distinguish these cases from his own shows only that there are multiple means to commit the offense of criminal contempt. The cases cited by the plaintiff illustrate one such means. The plaintiff's own case illustrates another. "[General Statutes] § 51-33 and its predecessors merely codify the court's inherent common law power to punish all contempts committed in its presence, *including a refusal to testify*." (Emphasis added.) *Ullmann* v. *State*, 230 Conn. 698, 705, 647 A.2d 324 (1994). A witness' unjustified refusal to testify "affront[s] the dignity and authority of the court." Id., 707. Accordingly, as is the case with a profane outburst, a refusal to testify may be punished as criminal contempt.

Because the plaintiff received an adequate grant of immunity, the court properly found him in contempt because the grant of immunity removed his fifth amendment privilege against compulsory self-incrimination and thereby rendered his refusal to testify legally susceptible of constituting contempt.

The writ of error is dismissed.

In this opinion the other judges concurred.

[1] General Statutes § 54-47a provides in relevant part: "(a) Whenever in the judgment of . . . a state's attorney . . . the testimony of any witness or the production of books, papers or other evidence of any witness (1) in any criminal proceeding involving . . . any . . . class A, B or C felony or unclassified felony punishable by a term of imprisonment in excess of five years for which the . . . state's attorney demonstrates that he has no other means of obtaining sufficient information as to whether a crime has been committed or the identity of the person or persons who may have committed a crime, before a court . . . of this state . . . is necessary to the public interest . . . the state's attorney . . . may, with notice to the witness, after the witness has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section.

"(b) Upon the issuance of the order such witness shall not be excused from testifying or from producing books, papers or other evidence in such case or proceeding on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, may be used as evidence against

him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence. . . ."

[2] The plaintiff also claimed in his brief that statutory transactional immunity was insufficient to protect his privilege against self-incrimination because it would not protect him from a subsequent prosecution for perjury in connection with his trial testimony, but at oral argument before this court, the plaintiff conceded that this argument is precluded by precedent. See *United States* v. *Apfelbaum*, 445 U.S. 115, 117, 100 S. Ct. 948, 63 L. Ed. 2d 250 (1980).

[3] The record provided does not make clear whether the plaintiff agreed to testify against his codefendant as part of a plea bargain, and if so, whether the substance of the plaintiff's testimony would have affected him in any way. The plaintiff's attorney did, however, refer to the fact that the plaintiff "bargained for" his sentence and that "that bargain [was] completely gone" when the plaintiff refused to testify. The prosecutor similarly remarked upon the plaintiff's plea agreement.

[4] Our Supreme Court has "disavow[ed] the obscure and seemingly anachronistic proposition that . . . [i]n a review of summary criminal contempt, [our] inquiry is limited to a determination of the jurisdiction of the court below," purportedly embracing only these three questions. *Hardy* v. *Superior Court*, supra, 305 Conn. 833. The Supreme Court did not specifically define the new scope of review on writs of error brought from judgments of criminal contempt, but the court made clear that such review extends at least to "procedural error . . . ." Id. Because the parties agree, however, that the inquiry in this case reaches only the question of whether the plaintiff's conduct was legally susceptible of constituting a contempt, we need not examine the new scope of review.

[5] Transactional immunity, which affords "full immunity from prosecution for the offense to which the compelled testimony relates," logically encompasses use and derivative use immunity. *Kastigar* v. *United States*, supra, 406 U.S. 453.

[6] The plaintiff refers, in passing, to article first, §§ 8 and 9, of the Connecticut constitution, but because he does not provide any separate analysis of the state constitutional issues, we do not address them here. See *State* v. *Peeler*, 271 Conn. 338, 432 n.79, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

———————————————