******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# INDEPENDENT PARTY OF CT—STATE CENTRAL ET AL. *v.* DENISE W. MERRILL, SECRETARY OF THE STATE, ET AL.
### (SC 20160)

Robinson, C. J., and Palmer, Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiffs in error, thirteen candidates for the state House of Representatives endorsed for the 2018 general election by a local faction of the state's Independent Party based in Danbury, brought a writ of error, seeking, inter alia, to preserve their rights in connection with a judgment rendered in the underlying action brought by that faction and its officers. In the underlying action, the Danbury faction and its officers sought, inter alia, a judgment declaring that the state's Independent Party is governed by a set of bylaws drafted in 2006 and not, as claimed by T and R, the leaders of another faction of the state's Independent Party based in Waterbury, a separate set of bylaws drafted in 2010. After the Danbury faction endorsed the thirteen plaintiffs in error, the trial court rendered judgment in favor of T and R, and ordered the secretary of the state to accept only those endorsements made pursuant to the 2010 bylaws. Subsequently, the secretary of the state sent a letter to one of the plaintiffs in error, M, and one of the Waterbury faction's nominees, H, who were both running in the 106th assembly district, and informed them that neither would be placed on the ballot as the Independent Party nominee for that office unless one of them withdrew. Two weeks later, the secretary of the state published a list of candidates that named twelve of the plaintiffs in error as candidates of the Independent Party, as the Danbury and Waterbury factions had not made conflicting nominations with respect to those candidates, but declining to name an Independent Party candidate in the 106th assembly district. Ballots were printed consistent with that list, and, shortly thereafter, this court granted H's motion to be designated as a defendant in error. The plaintiffs in error ultimately claimed that their writ of error was rendered moot by the letter and list of the secretary of the state. In response, H requested that this court issue an order requiring the secretary of the state to place her name on the ballot as the Independent Party's candidate in the 106th assembly district consistent with the trial court's decision in the underlying action and contended that, in light of that request, the writ of error was not moot. *Held* that the writ of error must be dismissed, this court having concluded that the claims made by the plaintiffs in error had been rendered moot and that H's separate request for relief was not properly before the court: in light of the secretary of the state's unchallenged decision to accept the nominations of twelve out of the thirteen plaintiffs in error and to print their names on the ballot for the 2018 general election, there was no practical relief that this court could afford the plaintiffs in error with respect to the trial court's decision in the underlying action, and, accordingly, their claims were moot, and the writ of error was nonjusticiable; moreover, this court declined to reach H's claim for affirmative relief, as that claim raised numerous issues of fact that should have been considered by a trial judge in the first instance.

Argued October 19, 2018—officially released February 19, 2019

*Procedural History*

Writ of error from the decision of the Superior Court in the judicial district of Hartford, *Hon. A. Susan Peck*, judge trial referee, who, exercising the powers of the Superior Court, ordered the Secretary of the State to accept only certain nominations and endorsements of the state's Independent Party. *Writ of error dismissed.*

*Proloy K. Das*, with whom was *Sarah Gruber*, for the plaintiffs in error (Timothy D. Walczak et al.).

*Maura Murphy Osborne*, assistant attorney general, with whom, on the brief, was *George Jepsen*, former attorney general, for the defendant in error (Denise W. Merrill).

*William M. Bloss*, with whom were *Alinor C. Sterling* and *Emily B. Rock*, for the defendants in error (Michael Telesca et al.).

*Prerna Rao*, with whom was *Daniel S. Jo*, for the defendant in error (Rebekah Harriman-Stites).

*Opinion*

ROBINSON, C. J. This writ of error is the companion case to *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, A.3d (2019), in which this court affirmed the judgment of the trial court resolving a long running dispute between the Danbury and Waterbury factions of the state's Independent Party by, inter alia, granting declaratory and injunctive relief directing the named defendant in the underlying action, Secretary of the State Denise W. Merrill (Secretary), to accept only those endorsements made pursuant to the party's 2010 bylaws. The plaintiffs in error, thirteen candidates for the state House of Representatives endorsed by the Danbury faction[1] prior to the issuance of the trial court's decision in the underlying action, brought this writ of error[2] to protect their rights with respect to the judgment of the trial court. The endorsed candidates now argue that their writ of error is moot given the unchallenged decision of the Secretary to accept the Danbury faction's endorsements with respect to twelve of them, thus allowing them to be on the Independent Party's ballot line for the 2018 election. Rebekah Harriman-Stites, a candidate endorsed by the Waterbury faction for the 106th assembly district, however, has appeared in the present proceeding as a defendant in error[3] and contends that the writ of error is not moot in light of her request that we order the Secretary to print her name on the ballot in accordance with the trial court's decision. Because the writ of error is moot, and Harriman-Stites' separate request for relief is not properly before us, we dismiss this writ of error.

The record reveals the following relevant facts and procedural history.[4] In the underlying action, the plaintiffs, the Independent Party of CT—State Central and its officers, Michael Duff, Donna L. LaFrance, and Roger Palanzo, who lead the Danbury faction of the Independent Party, brought an action seeking declaratory and injunctive relief against two defendants, Michael Telesca and Rocco Frank, Jr., who lead its Waterbury faction.[5] The central dispute in the underlying case concerned which of two sets of bylaws govern the Independent Party under General Statutes §§ 9-372 (6) and 9-374—namely, a set of bylaws that the Danbury faction filed with the Secretary in 2006 (2006 bylaws), or a set filed in 2010 (2010 bylaws), which was drafted after Ralph Nader had received a sufficient number of votes in the 2008 presidential election to afford the Independent Party with statewide minor party status for the first time.

After a three day trial to the court, on August 21, 2018, the trial court, *Hon. A. Susan Peck*, judge trial referee,[6] issued a lengthy memorandum of decision. With respect to its specific findings of fact and conclusions of law, the trial court first concluded that the 2010 bylaws were controlling under the statutory scheme

governing minor parties, in particular §§ 9-372 (6) and 9-374, the "plain language of [which indicates] that a minor party does not exist in Connecticut until it designates a candidate for office who achieves 1 percent of the vote." The trial court further observed that, in contrast to the 2010 bylaws, which were created in a statewide process after Nader's nomination in 2008, the 2006 bylaws were filed with the Secretary at a time when the "party so-named had not achieved minor party status for any statewide office." Thus, the trial court determined that the "2006 bylaws are valid only to the extent they are recognized as such within the local committee. Although the plaintiffs filed the 2006 bylaws with the [Secretary], the filing of these rules merely allowed the [Danbury faction] to nominate local candidates and get them on an official ballot once they had attained 1 percent of the vote for a particular office. The 2006 bylaws did not automatically allow the [Danbury faction] to gain control of the statewide Independent Party after the 2008 presidential election." (Footnote omitted.) Accordingly, the trial court concluded that "the only statewide Independent Party was created post-2008, and the 2010 bylaws are the only valid governing rules of that party."[7]

The trial court further concluded that the plaintiffs had "failed to establish by a preponderance of the evidence that they are entitled to the declaratory and injunctive relief requested in their second amended complaint." Instead, the trial court turned to the defendants' counterclaim and special defenses, and concluded that they had "established by a preponderance of the evidence that the 2010 bylaws are the validly adopted and operative bylaws of the Independent Party/ Independent Party of Connecticut, filed pursuant to the requirements of § 9-374, and that [Telesca and Frank] are the duly elected officers of the Independent Party/ Independent Party of Connecticut, and the individual plaintiffs are not. In addition, the court hereby declares that the 2006 bylaws apply only to the Danbury faction's local committee of the Independent Party. Finally, the court hereby declares and orders that the [Secretary] must accept only the nominations and endorsements of the Independent Party/Independent Party of Connecticut, made pursuant to the 2010 bylaws filed with the [Secretary] on March 22, [2010], or as may be amended, pursuant to . . . § 9-374." According to the plaintiffs, this order effectively "gives the Waterbury faction under the leadership of Telesca and Frank control of the statewide ballot line."

Prior to the issuance of the trial court's underlying decision, the Danbury faction published, in the August 15, 2018 edition of the Hartford Courant, notice of the "Independent Party Endorsement Meeting," scheduled for August 20, 2018. On August 20, 2018, the Danbury faction held that endorsement meeting and endorsed certain candidates for the 2018 general election, includ-

ing each of the endorsed candidates in the present proceeding. On the morning of August 21, 2018, the Danbury faction filed these endorsements with the Secretary. Later that same day, the trial court issued its memorandum of decision.

Given some uncertainty about the effect of the trial court's decision on those endorsements, on September 7, 2018, the endorsed candidates filed this writ of error to preserve their rights.[8] On September 7, 2018, the endorsed candidates also filed motions to intervene in the underlying action, and for declaration of an automatic stay pursuant to Practice Book § 72-3A.[9] The trial court did not take any action on these motions.

Subsequently, on September 11, 2018, the Secretary advised the parties and the individual candidates running for the 106th assembly district, Mitch Bolinsky, who was endorsed by the Danbury faction, and Harriman-Stites, who was endorsed by the Waterbury faction, by certified letter that the Secretary had received competing endorsements for the Independent Party ballot line. The Secretary informed Bolinsky and Harriman-Stites that, consistent with her policy and General Statutes § 9-250, she would not print either of their names as the Independent Party nominee for that office, unless one of them were to withdraw.

Telesca, as chairman of the Waterbury faction, received the letter from the Secretary on September 14, 2018, which was a Friday. That same day, Telesca called Ted Bromley, an attorney with the Secretary's office, and left him a voice mail message. Bromley responded to Telesca with an e-mail stating that he was out of the office and would look into the matter when he returned to the office on Monday. On Thursday, September 20, 2018, not having heard from Bromley, Telesca e-mailed Bromley a letter detailing the trial court's decision in the present case. In that letter, Telesca argued that the only nomination made pursuant to the 2010 bylaws was that of Harriman-Stites, noted that the Waterbury faction had not made any endorsements for certain other House or Probate Judge districts, and concluded that the Secretary must "disregard any nominations that you may have received from the Danbury faction . . . ." Telesca did not hear further from the Secretary's office.

On September 25, 2018, the Secretary published a list of nominees for the November, 2018 election, which included the twelve endorsed candidates other than Bolinsky, in accordance with the September 11, 2018 letter. Absentee ballots had been printed during the week of September 17, 2018, and were made available in town clerks on October 5, 2018, as required by General Statutes § 9-140. Further, military and overseas ballots were mailed to voters on September 22, 2018.

Shortly thereafter, Harriman-Stites filed a motion to

intervene in the underlying action, an objection to the endorsed candidates' motion for an automatic stay, and a caseflow request seeking to have her motion and objection heard along with the other posttrial motions filed by the endorsed candidates. Following a motion for continuance filed by the plaintiffs, to which Harriman-Stites' objected, oral arguments on posttrial motions were rescheduled for October 22, 2018. On October 17, 2018, Harriman-Stites filed a motion for contempt in the trial court against the Secretary, arguing that the court's decision has not been stayed and asking it to find the Secretary "in contempt of the orders of the court and [to] direct the Secretary to act consistent with the court's findings immediately." Although Harriman-Stites asked the trial court to consider this contempt motion at the October 22 hearing, the trial court, *Sheridan, J.*, rescheduled arguments on that motion and all other posttrial motions for October 29, 2018, because Judge Peck was unavailable until that date. Subsequently, because the October 29 hearing would have been after the statutory deadline for filing sample ballots; see General Statutes § 9-256; the trial court, *Sheridan, J.*, granted Harriman-Stites' request to mark off the October 29 hearing. Accordingly, the trial court has not taken action with respect to any of these posttrial motions filed by the endorsed candidates or Harriman-Stites.

In the meantime, briefing and oral argument on this writ of error and the plaintiffs' appeal continued on an expedited basis. See footnote 8 of this opinion. Beyond challenging the merits of the trial court's decision in the underlying action, the endorsed candidates now suggest that this writ of error has been rendered moot by intervening events, namely, the Secretary's September 11, 2018 decision to accept the Danbury faction's twelve unchallenged endorsements, as reflected in the list of nominees that she dated September 25, 2018.[10] In response, Harriman-Stites contends, inter alia, that (1) the writ of error is not moot, and (2) we should direct judgment enforcing the trial court's order and requiring the Secretary to accept the Waterbury faction's endorsement for purposes of the ballots for the 2018 election in the 106th assembly district.[11]

We heard oral argument on the writ of error and the underlying appeal on October 19, 2018. After oral arguments, we issued an order denying Harriman-Stites' request in this writ of error "for relief from [this] court prior to the election"[12] and stating that we would issue written opinions in both proceedings "in due course." This is the opinion relating to the writ of error.

We first consider whether this writ of error is moot, as argued by the endorsed candidates. "It is well established that [m]ootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . [T]he existence of an actual contro-

versy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *In re Emma F.*, 315 Conn. 414, 423–24, 107 A.3d 947 (2015); see, e.g., *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 13, 917 A.2d 966 (2007) ("the central question in a mootness problem is whether a change in the circumstances that prevailed at the beginning of the litigation has forestalled the prospect for meaningful, practical, or effective relief").

We conclude that the endorsed candidates' writ of error is moot. Given the Secretary's unchallenged decision to accept twelve of the thirteen nominations and print their names on the ballot for the 2018 election, there is no practical relief that we can afford them with respect to the trial court's decision. Accordingly, their claims are moot, and their writ of error is, therefore, nonjusticiable. See, e.g., *Statewide Grievance Committee* v. *Burton*, supra, 282 Conn. 7 ("[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine. . . . Consequently, a court may have subject matter jurisdiction over certain types of controversies in general, but may not have jurisdiction in any given case because the issue is not justiciable." [Citations omitted; internal quotation marks omitted.]).

Harriman-Stites argues, however, that the writ of error is not moot with respect to her claims because of the Secretary's "confounding and inexplicable" decision to leave her off the ballot, despite the Secretary's assurance that she would abide by the trial court's decision in this case. Specifically, Harriman-Stites asked us to render judgment denying the writ of error and to direct the trial court to order the Secretary to comply with the trial court's order by putting her name on the ballot for the 106th assembly district. In responding to that argument, the endorsed candidates relied on, inter alia, *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 595 A.2d 839 (1991), and *East Windsor* v. *East Windsor Housing, Ltd., LLC*, 150 Conn. App. 268, 92 A.3d 955 (2014), contending that we should refuse to reach this claim because "Harriman-Stites' raising of a claim for relief through an *opposition* to a writ of error is malapropos," and that her briefing of this issue is founded on Telesca's "untested, testimonial affidavit [which is] replete with hearsay."(Emphasis in original.) Given the numerous factual issues attendant to Harriman-Stites' improperly raised claims for relief,

we decline to consider them in the first instance in connection with this writ of error.

"A writ of error . . . is generally subject to the same procedural rules as direct appeals." *State* v. *Abushaqra*, 153 Conn. App. 282, 286 n.8, 100 A.3d 1014, cert. denied, 315 Conn. 906, 104 A.3d 757 (2014); see also Practice Book § 72-4 ("[e]xcept as otherwise provided by statute or rule, the prosecution and defense of a writ of error shall be in accordance with the rules for appeals"). Given Harriman-Stites' course of seeking this relief in her brief without filing a separate writ of error to seek affirmative relief with respect to the action or inaction of the trial court, we take guidance from the ample body of case law considering claims raised by appellees in briefs, without having first been raised in a cross appeal, seeking relief vis-à-vis the judgment of the trial court. As a general rule, "[i]f an appellee wishes to change the judgment in any way, the party must file a cross appeal." (Internal quotation marks omitted.) *East Windsor* v. *East Windsor Housing, Ltd., LLC*, supra, 150 Conn. App. 270 n.1; see also *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, supra, 219 Conn. 792 n.5 (declining to reach affirmative claims for relief raised by appellee because appellee failed to file cross appeal); *Board of Police Commissioners* v. *White*, 171 Conn. 553, 557, 370 A.2d 1070 (1976) (declining to reach appellees' claims that "the plaintiffs had waived any claim of illegality as to the collective bargaining agreement and that the court erred in overruling their plea in abatement addressed to the capacity of the plaintiffs to bring [the] action," because "[t]hey did not file an assignment of errors and a cross appeal and we do not consider the merits of these contentions"); *Farmers & Mechanics Savings Bank* v. *First Federal Savings & Loan Assn.*, 167 Conn. 294, 303 n.4, 355 A.2d 260 (1974) (declining to consider briefed issue concerning validity of restrictive covenants because, although appellees "raised this issue at the trial level, the trial court did not find it necessary to rule thereon," and appellee did not "file a cross appeal assigning error in the court's failure to treat this issue"); *East Windsor* v. *East Windsor Housing, Ltd., LLC*, supra, 270 n.1 (refusing appellee's request "to direct the trial court to remove costs of seven title searches and seven filing fees from the fees awarded to the plaintiff" because of failure to file cross appeal). This rule is not, however, absolute, and the court may consider such a claim otherwise improperly raised in the appellee's brief in the absence of prejudice to the appellant. See *Akin* v. *Norwalk*, 163 Conn. 68, 70–71, 301 A.2d 258 (1972); *Rizzo* v. *Price*, 162 Conn. 504, 512–13, 294 A.2d 541 (1972); *DiSesa* v. *Hickey*, 160 Conn. 250, 262–63, 278 A.2d 785 (1971).

We decline to reach this claim for affirmative relief, raised in the first instance in Harriman-Stites' brief. We agree with the endorsed candidates that this claim raises numerous issues of fact, particularly with respect

to the feasibility of an order to put Harriman-Stites on the ballot given the timing of the election, that would have been more properly considered by a trial judge in the first instance. See *Rizzo* v. *Price*, supra, 162 Conn. 513 (declining to review appellee's challenge, raised for first time in brief, to trial court's failure to make certain factual conclusions as "clearly prejudicial to the appellant"); see also *Furs* v. *Superior Court*, 298 Conn. 404, 412–13, 3 A.3d 912 (2010) (declining to reach state's claim in writ of error challenging contempt finding, which state did not raise as "an [alternative] ground for affirmance in a filing pursuant to Practice Book § 63-4 [a] [1], and did not designate . . . as such in its brief" because it depended on presumption that "trial court would have accepted the state's claim of an independent source of authority to grant use immunity only" or that plaintiff-in-error, "who claims that he refused to testify on the advice of counsel, would have refused to testify if he had been informed that the state had inherent authority to offer use immunity, which would be sufficient under the fifth amendment to compel his testimony and that this would not be violative of the statute" [footnote omitted]); *Gianetti* v. *Norwalk Hospital*, 266 Conn. 544, 560, 833 A.2d 891 (2003) ("[o]rdinarily it is not the function of this court or the Appellate Court to make factual findings, but rather to decide whether the decision of the trial court was clearly erroneous in light of the evidence . . . in the whole record" [internal quotation marks omitted]). Although we are sympathetic to the delays experienced by Harriman-Stites in obtaining a hearing before the trial court, we note that, beyond objecting to the caseflow requests filed by the plaintiffs and the endorsed candidates, she did not file any motions before that court seeking expedited review, including assignment to a different judge given Judge Peck's unavailability, or seek similar relief from this court under Practice Book § 60-2. Accordingly, we conclude that this unmeritorious request for relief does not save the writ of error from dismissal.[13]

The writ of error is dismissed.

In this opinion the other justices concurred.

[1] These endorsed candidates are: Timothy D. Walczak for the 16th assembly district, Mary M. Fay for the 18th assembly district, Chris Forster for the 21st assembly district, Mike J. Hurley for the 28th assembly district, Lillian A. Tanski for the 31st assembly district, Linda J. Szynkowicz for the 33rd assembly district, Samuel Belsito, Jr., for the 53rd assembly district, Don E. Crouch for the 85th assembly district, Mitch Bolinsky for the 106th assembly district, Veasna Roeun for the 109th assembly district, Erin M. Domenech for the 110th assembly district, Michael S. Ferguson for the 138th assembly district, and Terrie E. Wood for the 141th assembly district. For the sake of simplicity, we hereinafter refer to these individuals, collectively, as the endorsed candidates.

[2] The plaintiffs brought this writ of error to this court directly pursuant to General Statutes § 51-199 (b) (10).

[3] On October 3, 2018, we granted Harriman-Stites' motion to be designated as a party in this writ of error.

[4] A more detailed overview of the facts and procedural history is set forth in the decision of this court governing the direct appeal. See *Independent Party of CT—State Central* v. *Merrill*, supra, 330 Conn. 681.

We note that portions of our factual recitation are based on factual representations by the parties with respect to events that took place subsequent to the issuance of the trial court's decision, which we may consider in determining whether those events have rendered this writ of error moot. See, e.g., *Private Healthcare Systems*, *Inc.* v. *Torres*, 278 Conn. 291, 302, 898 A.2d 768 (2006).

We also note that the endorsed candidates ask us to strike or disregard certain portions of the recitation of facts in Harriman-Stites' brief and supporting affidavit as improperly submitted material that is based on hearsay. We emphasize that we consider this material, and other uncontested factual representations about events that took place subsequent to the trial court's decision in the present case, solely as a representation of counsel made for background purposes, particularly given the expedited nature of this proceeding.

[5] For the sake of simplicity, we hereinafter refer to Telesca and Frank, collectively, as the defendants.

[6] Unless otherwise noted, all references herein to the trial court are to Judge Peck.

[7] The trial court also rejected the plaintiffs' additional arguments about why the 2006 bylaws should be considered controlling. With respect to those relevant to this writ of error, the trial court first considered the plaintiffs' conduct subsequent to the adoption of the 2010 bylaws and concluded that "the defendants have established by a preponderance of the evidence submitted in this case [via their special defense] that the plaintiffs have waived any right they may have had to challenge the validity of the 2010 bylaws." The trial court also rejected the plaintiffs' contention that a 2012 decision issued by Judge Mark H. Taylor in *Independent Party of Connecticut* v. *Dietter*, Superior Court, judicial district of Waterbury, Docket No. CV-12-5016387-S (September 28, 2012) (2012 Waterbury action), which had concluded "that the 2006 bylaws were the validly adopted Independent Party rules," was entitled to preclusive effect in the present case. The trial court reasoned that the 2012 Waterbury action was distinguishable because it did not concern statewide office, was only "a motion for a temporary order of mandamus, and . . . was [subsequently] withdrawn." We address and decide these issues in the companion opinion. See *Independent Party of CT—State Central* v. *Merrill*, supra, 330 Conn. 681.

[8] Also on September 7, 2018, the plaintiffs appealed from the judgment of the trial court to the Appellate Court, which was later transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1, and then expedited and argued together with this writ of error. See *Independent Party of CT—State Central* v. *Merrill*, supra, 330 Conn. 685 n.2.

[9] Practice Book § 72-3A provides in relevant part: "Except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order that is challenged in the writ of error shall be automatically stayed for twenty days and if the writ is timely allowed and signed, the stay shall continue until the return date set forth in the writ. If a writ of error is timely filed, such proceedings shall be stayed until the final determination of the writ. . . . The automatic stay only applies to proceedings to enforce or carry out the judgment or order that is being challenged in the writ of error and does not stay any other trial court proceedings. There shall be no automatic stay if a writ of error is filed challenging an order of civil contempt, summary criminal contempt or any decisions under Section 61-11 (b) and (c) in accordance with the rules for appeals.

"Any aggrieved nonparty plaintiff in error or defendant in error or a party may file a motion to terminate or impose a stay in matters covered by this section, either before or after the judgment or order is rendered, based upon the existence of a writ of error. Such a motion shall be filed in accordance with the procedures in Section 61-11 (d) and (e) or Section 61-12. Whether acting on a motion of a party, a nonparty plaintiff in error or defendant in error or sua sponte, the judge shall hold a hearing prior to terminating the automatic stay. . . ."

[10] The defendants agree with the endorsed candidates' mootness arguments in this writ of error because "it appears that the Secretary did not apply the Superior Court's order that she accept only nominations made by the [Waterbury faction] and that [the Secretary] printed ballots as [the endorsed candidates] hoped she would." The defendants posit further that, "[a]ssuming arguendo that the [endorsed candidates] could bring a writ of error, they claim standing as candidates endorsed for 2018—and so they have the relief they seek."

Similarly, the Secretary filed a brief representing her "understanding that

the 2010 bylaws govern statewide offices but that the 2006 bylaws can also be applied to the extent they do not conflict with the 2010 bylaws." Acknowledging her neutral position with respect to the parties' factional dispute, the Secretary urged us not to permit this litigation to create a costly disruption to the 2018 general election, in which absentee voting had already commenced; the Secretary did not, however, address specifically whether the writ of error is moot.

[11] Although the defendants "recognize[d] that it is too late to correct ballots at this point, at least on a broad scale basis," they observed in a footnote that "[w]hether relief could be granted to [Harriman-Stites] for the [106th assembly district] endorsement, seems to present a narrower question."

[12] On October 18, 2018, Harriman-Stites moved to supplement her appendix with the affidavit of LeReine Frampton, the Democratic Registrar of Voters in Newtown, to provide guidance to this court on the most current status of the ballots for the 106th assembly district. We denied that motion prior to oral argument on October 19, 2018.

[13] We note that the endorsed candidates do not contend that we lack subject matter jurisdiction to consider Harriman-Stites' claims as a result of her failure to file her own writ of error seeking relief vis-à-vis the judgment of the trial court. Similarly, our independent research does not reveal any authority to support that proposition, insofar as jurisdiction existed in the first instance over the endorsed candidates' writ of error, to which her claim for relief apparently attaches. See, e.g., *State* v. *Skipwith*, 326 Conn. 512, 526 n.18, 165 A.3d 1211 (2017) (discussing codification of common-law requirements for standing to file writ of error as "codified in Practice Book § 72-1 [a]"). Nevertheless, a rescript ordering dismissal with respect to the writ of error as a whole remains appropriate, as that rescript has been used interchangeably to dispose of writs of error that lack merit or are jurisdictionally defective. See, e.g., id., 516 n.5 (citing cases).